**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Novartis and Par Antitrust Litigation | 1:18-cv-04361-AKH |
| This Document Relates To:<br><br>All Actions | |

**JOINT SUBMISSION CONCERNING SCHEDULING DISPUTES**

    The parties have three case management disputes. First, the parties dispute whether Plaintiffs may submit reply expert reports. Second, the parties dispute whether merits and class expert reports should be submitted on the same schedule. Third, the parties have not reached agreement on dates for summary judgment briefing, *Daubert* briefing, and trial. The parties submit competing proposed schedules as **Exhibit A** hereto.

    **I.**    **Whether Plaintiffs Are Permitted to Serve Reply Expert Reports**

    **PLAINTIFFS' POSITION**:

    The Court has determined that the conduct challenged in this case is subject to the antitrust rule of reason rather than the *per se* rule. ECF No. 193. The Court of Appeals has explained that the rule of reason is a three-step analysis, in which plaintiffs have an initial burden of production, and then a second burden after defendants meet their own burden of production:

> [r]ule of reason analysis proceeds in three steps. First, the plaintiff bears the initial burden of showing that the defendant's conduct had an actual adverse effect on competition as a whole in the relevant market. If plaintiff satisfies this burden, the burden then shifts to defendant to offer evidence that its conduct had pro-competitive effects. If defendant is able to offer such proof, the burden shifts back to plaintiff, who must prove that any legitimate competitive effects could have been achieved through less restrictive alternatives.

*Ark. Carpenters Health & Welfare Fund v. Bayer AG*, 604 F.3d 98, 104 (2d Cir. 2010), *rev'd on other grounds*, *FTC v. Actavis*, 570 U.S. 136 (2013) (emphasis in original) (internal citations and quotation marks omitted). *See also King Drug Co. of Florence, Inc. v. SmithKline Beecham Corp.*, 791 F.3d 388, 411, 412 (3d Cir. 2015) ("the plaintiff will have the opportunity to rebut the defendant's explanation.").

Plaintiffs cannot, and are not required to, anticipate what Defendants will say to attempt to satisfy their burden of showing procompetitive justifications for the reverse payment and Par's delay in this case. Yet Defendants' proposal as set forth below seeks to require Plaintiffs to do exactly that. Plaintiffs do not intend to "lob" new reply arguments to "sandbag[]" Defendants as they claim below. Rather, it is Defendants who seek to impair Plaintiffs' ability to respond to new arguments despite the fact that under the rule of reason, Plaintiffs are entitled to rebut any asserted procompetitive justifications by showing that they could have been achieved without a reverse payment and Par's delay. *See, e.g., New York v. Actavis PLC*, 787 F.3d 638, 652 (2d Cir. 2015) ("the monopolist may proffer nonpretextual procompetitive justifications for its conduct. The plaintiff may then . . . rebut those justifications.") (internal citations and quotation marks omitted).

The same reasoning applies to class certification. Plaintiffs cannot predict what Defendants' experts will say in opposition to class certification, and so need the opportunity to refute whatever arguments Defendants' experts make. In no past case involving delayed generic drug competition have plaintiffs not submitted a reply expert report, either as of right or pursuant to a motion for leave attaching a proposed reply expert report.

**DEFENDANTS' POSITION**:

Plaintiffs have offered no reason to upset the Court's articulated preference against reply expert reports. Plaintiffs will have the opportunity to try to carry their burdens in the first round of expert reports; Defendants will have an opportunity to respond, in opposing expert reports. Plaintiffs have no basis to preemptively seek now, months ahead of time, a blanket order that they be permitted to file reply expert reports. Such an order would be an invitation for the Plaintiffs to omit from their initial expert reports the arguments they will ultimately rely upon, and to save those arguments for the additional round of reports that Plaintiffs claim to need, thereby depriving Defendants' experts of the opportunity to comment on such arguments.

The Court has already addressed this issue with respect to class certification. At the outset of the case, the Court explained, "If there is a division among experts I can't resolve from the initiating and opposing lead depositions . . . we'll need depositions but I don't see any value in reply reports." Hrg. Tr. 7/27/18 at 15:21-24. Plaintiffs raised no objection at the time, although they now seek a different result. Plaintiffs cite no authority requiring the Court to permit them to serve two rounds of expert reports. There is no reason why Plaintiffs cannot make their points in favor of class certification in one round of expert reports to which Defendants will have one round in which to respond.

Nor is there any reason why Plaintiffs should be permitted to serve reply expert reports in the "merits" phase, after class certification. In the experience of defense counsel, reply expert reports are often used to lob into the case arguments that plaintiffs could have but did not make in their opening reports—thereby sandbagging defendants, and forcing them to seek leave to serve sur-reply expert reports. All of this is easily avoided by having each side serve one round of reports.

Plaintiffs cannot, and are not required to, anticipate what Defendants will say to attempt to satisfy their burden of showing procompetitive justifications for the reverse payment and Par's delay in this case. Yet Defendants' proposal as set forth below seeks to require Plaintiffs to do exactly that. Plaintiffs do not intend to "lob" new reply arguments to "sandbag[]" Defendants as they claim below. Rather, it is Defendants who seek to impair Plaintiffs' ability to respond to new arguments despite the fact that under the rule of reason, Plaintiffs are entitled to rebut any asserted procompetitive justifications by showing that they could have been achieved without a reverse payment and Par's delay. *See, e.g., New York v. Actavis PLC*, 787 F.3d 638, 652 (2d Cir. 2015) ("the monopolist may proffer nonpretextual procompetitive justifications for its conduct. The plaintiff may then . . . rebut those justifications.") (internal citations and quotation marks omitted).

The same reasoning applies to class certification. Plaintiffs cannot predict what Defendants' experts will say in opposition to class certification, and so need the opportunity to refute whatever arguments Defendants' experts make. In no past case involving delayed generic drug competition have plaintiffs not submitted a reply expert report, either as of right or pursuant to a motion for leave attaching a proposed reply expert report.

**DEFENDANTS' POSITION**:

Plaintiffs have offered no reason to upset the Court's articulated preference against reply expert reports. Plaintiffs will have the opportunity to try to carry their burdens in the first round of expert reports; Defendants will have an opportunity to respond, in opposing expert reports. Plaintiffs have no basis to preemptively seek now, months ahead of time, a blanket order that they be permitted to file reply expert reports. Such an order would be an invitation for the Plaintiffs to omit from their initial expert reports the arguments they will ultimately rely upon, and to save those arguments for the additional round of reports that Plaintiffs claim to need, thereby depriving Defendants' experts of the opportunity to comment on such arguments.

The Court has already addressed this issue with respect to class certification. At the outset of the case, the Court explained, "If there is a division among experts I can't resolve from the initiating and opposing lead depositions . . . we'll need depositions but I don't see any value in reply reports." Hrg. Tr. 7/27/18 at 15:21-24. Plaintiffs raised no objection at the time, although they now seek a different result. Plaintiffs cite no authority requiring the Court to permit them to serve two rounds of expert reports. There is no reason why Plaintiffs cannot make their points in favor of class certification in one round of expert reports to which Defendants will have one round in which to respond.

Nor is there any reason why Plaintiffs should be permitted to serve reply expert reports in the "merits" phase, after class certification. In the experience of defense counsel, reply expert reports are often used to lob into the case arguments that plaintiffs could have but did not make in their opening reports—thereby sandbagging defendants, and forcing them to seek leave to serve sur-reply expert reports. All of this is easily avoided by having each side serve one round of reports.

The rule of reason burden shifting framework that Plaintiffs cite—which would only apply to a subset of the parties' experts in any event—does not compel a different result. In the (unlikely) event that Plaintiffs' experts on that framework (as opposed to the experts who will not be addressing it at all) do not address in their opening reports a particular argument asserted by Defendants' experts, Plaintiffs can seek leave to serve a limited additional report as necessary. But that is not a reason to grant Plaintiffs *now*—months before any party serves any expert reports—leave for Plaintiffs to serve reply expert reports, much less to presumptively grant such leave as to *all* of Plaintiffs' experts, without regard to whether they even are addressing the rule of reason.

Defendants respectfully submit that, as to both class certification issues and the merits, each side should be permitted one round of expert reports.

## II.   Whether Merits and Class Reports Should Be Simultaneous

**PLAINTIFFS' POSITION**:

Defendants wisely agreed to delay class certification until the end of fact discovery, but now invite a doubling of the number of expert reports the Court must study by proposing to delay expert reports going to the merits of the case until after class certification. This invites waste, duplication, and increased costs. First, Defendants' proposal will require one set of expert reports going to class certification and a second, later set going to the merits of the case, multiplying costs and paper. If class and merits were to proceed at the same time, the same experts who opine concerning class will opine concerning merits and would be required to submit (and burden the Court with) half the number of reports.

Second, under Defendants' proposal, the Retailer Plaintiffs (who do not seek class certification) will sit idle for months (or longer) during the pendency of class certification in this court and the court of appeals, with the factual record closed and yet expert discovery stalled indefinitely. Third, Defendants' proposal will deprive class certification practice of the concrete and final trial opinions of the parties' respective experts on the issues of causation, injury, and damages, injecting needless speculation about what those opinions might be. In ruling on class certification, why should the Court have to guess about what the causation, injury and damages opinions of the parties' experts will be?

Plaintiffs' proposal to exchange single reports containing both merits expert opinions and class certification expert opinions will solve all of these problems.

Defendants suggest that, in another case, counsel for certain of the plaintiffs "sought leave to revise merits expert reports . . . in response to an adverse class certification ruling" and that as a "result there will be a new round of depositions and expert reports (on both sides) with just a few months to go before trial." Defendants have stated to Plaintiffs that they are referring to *In re Androgel Antitrust Litigation (No. II)*, 1:09-MD-2084-TWT (N.D. Ga), pending before Judge Thrash. Defendants have misrepresented proceedings in that case. After class certification was denied last year, the (former) class plaintiffs served a three-page report providing individual damage figures for the former class representatives. Defendants did not object and Retailer

3

Plaintiffs were not parties to that request. More recently, the former class plaintiffs and the Retailer Plaintiffs, who are trying their case together, received permission from Judge Thrash to serve supplemental reports so that the plaintiffs can potentially *reduce* the number of experts that will testify at the trial scheduled for February 4, 2020. This had *nothing* to do with the ruling on class certification.

**DEFENDANTS' POSITION**:

The issue is whether the Court should first decide whether the proposed classes of plaintiffs are to be certified before the parties proceed to have their experts address the merits of the parties' underlying dispute. Defendants respectfully submit that such an approach is the proper course in this case, for three reasons.

*First*, this is the route the Court charted at the outset, ordering that the parties first complete class certification expert reports and briefing before merits-related deadlines were set. At the conference in July 2018, the Court ruled that, after the Court "decide[d] the certification issue," the Court would "have a conference" to decide the remaining merits-related deadlines, including "experts." 7/28/2018 Hrg. Tr. at 16:8-18. Based on the Court's instruction, the parties *jointly* submitted a proposed schedule which provided dates for class certification expert reports and class certification briefing, and left all merits-related deadlines (*e.g.*, merits expert reports, summary judgment and *Daubert* motions) to be scheduled at a conference after class certification. ECF No. 58. The Court approved that schedule. ECF No. 59. After the parties sought an extension of certain deadlines, including class certification expert reports and briefing, the Court decided to further defer all deadlines other than document discovery until the upcoming September 5, 2019 conference. ECF No. 77. The Court did not indicate that it had changed its position on deciding class certification prior to setting merits-related deadlines, and Plaintiffs provide no basis to change course now.

*Second*, separating out merits expert discovery will ensure the parties have time to complete fact depositions at the same time that class certification is being briefed, class certification experts are being deposed, and the issue is decided. Defendants are not proposing to delay fact witness depositions—only to wait to address merits *expert* discovery until after class certification.[1]

*Third*, deciding class certification before proceeding to merits expert discovery is more efficient because it will avoid the need to reopen merits expert discovery to address the Court's ruling on class certification. If the Court certifies the two proposed classes of plaintiffs—the direct purchasers and the indirect purchasers—then Plaintiffs' experts can proceed to address the issues of "causation, injury and damages," as Plaintiffs put it, that Plaintiffs believe bear on the case based on the class certification rulings. If, however, the Court declines to certify one or both classes (and it is only the individual plaintiffs who remain), decides to certify a narrower class, and/or decides to certify subclasses, that will bear directly on the issues of causation, injury and damages that will be addressed in merits expert discovery.

---

[1] Nor would this result in multiple depositions for experts. In the event a class certification expert addresses any merits issues in his or her report, the parties can question the expert in a deposition as to such issues.

That the Court's rulings on class certification will impact merits expert discovery is not mere conjecture. In defense counsel's experience, plaintiffs often seek to revise their merits expert discovery theories in view of the Court's rulings on class certification. Indeed, just a few weeks ago, counsel for certain of the plaintiffs in this case sought leave to revise merits expert reports in another case in response to an adverse class certification ruling. Plaintiffs' counsel explained in that case—a so-called "generic delay" case—that their experts needed to change theories to adjust to the Court's class certification ruling, and the result there is that there will be a new round of depositions and expert reports (on both sides) with just a few months to go before trial. Notably, the request to revise expert reports in view of the class certification ruling was joined in by the Retailer Plaintiffs in that case (represented by the same counsel); despite their insistence here that because they intend to opt out of any class they should not have to abide class certification discovery and briefing, the reality is that their merits expert theories, too, may well change upon the Court's rulings on those issues. It is that result that Defendants seek to avoid here, in this case.

The parties can avoid any need to revise or redo merits expert discovery if they first have in hand the Court's decisions on class certification. Defendants respectfully submit that the case should proceed in the same orderly fashion envisioned by the Court at the outset: a decision on class certification first, and merits expert discovery thereafter.

### III. When Dates Should Be Scheduled for Summary Judgment, *Daubert* Motions, and Trial

**PLAINTIFFS' POSITION**:

Plaintiffs' proposed schedule is designed to advance this case as expeditiously as possible. In our experience from scores of pharmaceutical antitrust cases, a trial date serves as the strongest available impetus towards resolution. To that end, Plaintiffs propose dates certain for Summary Judgment (January 29, 2021) and *Daubert* motions (same), and suggest a trial date on October 15, 2021 or as soon thereafter as the Court is available. Defendants have (to date) offered Plaintiffs no reason to delay this case for many more years.

**DEFENDANTS' POSITION**:

Defendants propose to schedule now the completion of fact depositions, class certification expert discovery and briefing, and argument. Defendants propose that the parties return to the Court for a status conference after a decision on class certification to address the remaining deadlines: for merits experts, summary judgment, *Daubert* motions, and trial.

Again, Defendants only seek to follow the Court's indicated preferences from prior hearings. *See* 7/28/2018 Hrg. Tr. at 16. This is not "delay", as Plaintiffs claim. Once class certification is addressed, we are confident the Court will set the remaining schedule in light of the status of the case at that time.

For these reasons, Defendants respectfully submit that the Court should set these remaining deadlines at a status conference upon the conclusion of the class certification stage.

DATED: September 4, 2019

By: */s/ Dan Litvin*
Bruce E. Gerstein
Joseph Opper
Dan Litvin
**GARWIN GERSTEIN & FISHER LLP**
88 Pine Street, 10th Floor
New York, NY 10005
Tel: (212) 398-0055
Fax: (212) 764-6620
bgerstein@garwingerstein.com
jopper@garwingerstein.com
dlitvin@garwingerstein.com

*Attorneys for Plaintiff Drogueria Betances, LLC and interim lead counsel for the direct purchaser class*

David Raphael
Erin Leger
Susan Segura
**SMITH SEGURA & RAPHAEL, LLP**
3600 Jackson St., Ste. 111
Alexandria, LA 71303
Tel: (318) 445-4480
Fax: (318) 487-1741
draphael@ssrllp.com
eleger@ssrllp.com
ssegura@ssrllp.com

John Gregory Odom
Stuart Des Roches
Andrew Kelly
Dan Chiorean
**ODOM & DES ROCHES**
Poydras Center
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078
jodom@odrlaw.com
stuart@odrlaw.com
akelly@odrlaw.com
dchiorean@odrlaw.com

By: */s/ Robin A. van der Meulen*
Gregory S. Asciolla
Robin A. van der Meulen
Tianran Song
**LABATON SUCHAROW LLP**
140 Broadway
New York, New York 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
gasciolla@labaton.com
rvandermeulen@labaton.com
tsong@labaton.com

*Attorneys for Plaintiff UFCW Local 1500 Welfare Fund and interim lead counsel for the end-payor class*

Robert G. Eisler
Deborah A. Elman
Kelly L. Tucker (*pro hac vice*)
Chad B. Holtzman
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue
New York, NY 10017
Tel.: (646) 722-8500
Fax: (646) 722-8501
reisler@gelaw.com
delman@gelaw.com
choltzman@gelaw.com
ktucker@gelaw.com

*Attorneys for Plaintiff Law Enforcement Health Benefits Inc. and the end-payor class*

Russell A. Chorush
Miranda Jones
**HEIM PAYNE & CHORUSH LLP**
1111 Bagby, Suite 2100
Houston, TX 77002
Tel: (713) 221-2000
Fax: (713) 221-2021
rchorush@hpcllp.com
mjones@hpcllp.com

*Additional Attorneys for Plaintiff Drogueria Betances, LLC and for the direct purchaser class*

Kristyn Fields
**FARUQI & FARUQI, LLP**
685 Third Ave., Floor 26
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
kfields@faruqilaw.com

Peter Kohn
Joseph T. Lukens
**FARUQI & FARUQI, LLP**
101 Greenwood Ave., Suite 600
Jenkintown, PA 19046
Tel: (215) 277-5770
pkohn@faruqilaw.com
jlukens@faruqilaw.com

David F. Sorensen
Caitlin G. Coslett
**BERGER MONTAGUE PC**
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
dsorensen@bm.net
ccoslett@bm.net

*Attorneys for Plaintiff Rochester Drug Co-Operative, Inc. and the direct purchaser class*

By: */s/ Benjamin M. Greenblum*
Benjamin M. Greenblum
Elise Baumgarten
Thomas Ryan
R. Chet Otis
**WILLIAMS & CONNOLLY LLP**
650 Fifth Avenue, Suite 1500
New York, New York 10019
Tel: (646) 949-2800
Fax: (646) 949-2801
bgreenblum@wc.com

*Attorneys for Defendant Par Pharmaceutical, Inc.*

By: */s/ Julie A. North*
Evan R. Chesler
Julie A. North
**CRAVATH, SWAINE & MOORE LLP**
825 Eighth Avenue
New York, New York 10019
Tel: (212) 474-1000
Fax: (212) 474-3700
echesler@cravath.com
jnorth@cravath.com

*Attorneys for Defendants Novartis Pharmaceuticals Corporation and Novartis AG*

By: /s/ *Lauren Ravkind*
Richard Alan Arnold
Scott E. Perwin
Lauren C. Ravkind
Anna T. Neill
Joshua Gray
**KENNY NACHWALTER P.A.**
Four Seasons Tower
1441 Brickell Avenue, Suite 1100
Miami, FL 33131
Tel: (305) 373-1000
Fax: (305) 372-1861
sperwin@knpa.com
lravkind@knpa.com
aneill@knpa.com

7

Robert N. Kaplan
Matthew P. McCahill
Ralph E. Labaton
**KAPLAN FOX & KILSHEIMER, LLP**
850 Third Avenue, 14th Floor
New York, New York 10022
Tel:  212-687-1980
Fax:  212-687-7714
rkaplan@kaplanfox.com
mmccahill@kaplanfox.com
rlabaton@kaplanfox.com

Joseph M. Vanek
David P. Germaine
**VANEK, VICKERS & MASINI P.C.**
55 W. Monroe, Suite 3500
Chicago, Illinois 60603
Tel:  312-224-1500
Fax:  312-224-1510
jvanek@vaneklaw.com
dgermaine@vaneklaw.com

*Attorneys for Plaintiff FWK Holdings, LLC and the direct purchaser class*

Michael L. Roberts
Debra G. Josephson
Stephanie E. Smith
**ROBERTS LAW FIRM, P.A**
20 Rahling Circle
Little Rock, AR 72223
Tel.: (501) 821-5575
Fax: (501) 821-4474
mikeroberts@robertslawfirm.us
debrajosephson@robertslawfirm.us
stephaniesmith@robertslawfirm.us

*Attorneys for Plaintiff KPH Healthcare Services, Inc., a/k/a Kinney Drugs, Inc and the direct purchaser class*

*Attorneys for Plaintiffs Walgreen Co., The Kroger Co., and H-E-B, L.P.*

By: */s/ Eric L. Bloom*
Alexander J. Egervary
Barry L. Refsin
Eric L. Bloom
**HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER**
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200
aegervary@hangley.com
brefsin@hangley.com
ebloom@hangley.com

*Attorneys for Plaintiffs CVS Pharmacy, Inc., Rite Aid Corporation & Rite Aid Hdqtrs. Corp.*