## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re Novartis and Par Antitrust Litigation** | **1:18-cv-04361-AKH** |
| **This Document Relates To:**<br><br>    All Actions | |

### MEMORANDUM OF LAW IN SUPPORT OF NOVARTIS'S MOTION TO COMPEL <u>EXPRESS SCRIPT HOLDING COMPANY'S PRODUCTION OF DATA RESPONSIVE TO SUBPOENA</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.      BACKGROUND ................................................................................................2

II.     LEGAL STANDARD.........................................................................................5

III.    ARGUMENT .....................................................................................................6

IV.    CONCLUSION..................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 2019 WL 3334503 (S.D.N.Y. July 25, 2019)..................................................................................................................5

*Citizens Union of City of New York v. Attorney General of New York*, 269 F. Supp. 3d 124 (S.D.N.Y. 2017)....................................................................................5

*Conopco, Inc. v. Wein*, 2007 WL 1040676 (S.D.N.Y. Apr. 4, 2007) ...............................7

*Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*, 91 F.R.D. 84 (E.D.N.Y. 1981).................................................................................................................7

*In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655 (S.D.N.Y. 2018)........................2

*In re Salomon Bros. Treasury Litig.*, No. 91 CIV. 5471 (RPP), 1994 WL 62852 (S.D.N.Y. Feb. 22, 1994).....................................................................................................5

*United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97 (S.D.N.Y. 1979) ...................5

**Statutes & Rules**

Fed. R. Civ. P. 26(b)(1)......................................................................................................5

**Other Authorities**

CBO, Prescription Drug Pricing in the Private Sector, 10 (2007), *available at* https://www.cbo.gov/sites/default/files/110th-congress-2007-2008/reports/01-03-prescriptiondrug.pdf ..............................................................................................2, 3

The Novartis Defendants (Novartis Pharmaceuticals Corporation and Novartis AG) respectfully request that the Court compel Express Scripts Holding Company ("Express Scripts") to produce data in response to Novartis's subpoena *duces tecum* served on October 11, 2019, which is highly relevant to assess Plaintiffs' claims in this litigation.  There is no burden to producing the data, nor is there an asserted privilege with respect to it.

Two named Plaintiffs represent a purported class of so-called "end-payors" that allegedly reimbursed pharmacies for their insureds' purchases of Novartis' anti-hypertensive medication Exforge and its generic equivalent, which was manufactured by Defendant Par Pharmaceutical, Inc. ("Par").  The so-called "End-Payor Plaintiffs" ("EPPs") are indirect purchasers that are separated in the chain of pharmaceutical transactions from the Defendants and from the actual consumers of the medications by several steps:  EPPs claim to have paid some portion of the price of Exforge or generic Exforge when it was prescribed to their insureds, who purchased it from a pharmacy, which pharmacy was later paid, in part, by monies originating from EPPs. This motion seeks a complete picture of the data surrounding such transactions.

EPPs allege that they were forced to pay inflated prices for Exforge and its generic as a result of a license agreement between Novartis and Par.  The subpoenaed data will help determine the prices that the EPPs—and the class members they seek to represent—actually paid for both Exforge and its generic, inclusive of any discounts or rebates provided to them by Express Scripts, and will be the subject of expert discovery on damages and class certification briefing before this Court.  For that reason, over the last eight months Novartis has met and

conferred numerous times with Express Scripts requesting that it provide this information. Express Scripts has refused, forcing Novartis to make this motion.[1]

## I.      BACKGROUND

In order to determine the extent, if any, of EPPs' harm stemming from the license agreement between Novartis and Par, Defendants must be able to take full discovery regarding the prices that EPPs and the class members they seek to represent paid for Exforge and its generic equivalent.  With respect to the EPPs themselves, a subset of that information can be obtained through party discovery; other such information, however, is within the possession of Express Scripts, the subpoenaed non-party.

Express Scripts is a pharmacy benefit manager (or "PBM"), which manages prescription medication benefits on behalf of insurers, health benefit funds and other third-party payors that are included in the putative class of EPPs in this case.  PBMs play a central role in pharmaceutical transactions, including by negotiating prices for medications on behalf of their EPP clients with pharmacies (which PBMs reimburse for prescribed medications) and pharmaceutical manufacturers.  In the course of those negotiations, PBMs often secure rebates and discounts on those prices, sometimes passing along the savings to their clients.  *See, e.g.*, *In re Express Scripts/Anthem ERISA Litig.*, 285 F. Supp. 3d 655, 663 (S.D.N.Y. 2018).  As the Congressional Budget Office ("CBO") has explained, "PBMs play a key role in negotiating the final price that manufacturers and pharmacies receive on a prescription drug sale."  CONG. BUDGET OFF., PRESCRIPTION DRUG PRICING IN THE PRIVATE SECTOR, PAPER PUB. NO. 2703 10 (2007), *available at* https://www.cbo.gov/sites/default/files/110th-congress-2007-

---

[1] Novartis files herewith the Declaration of Julie A. North ("North Decl.") and accompanying exhibits in support of this motion.

2008/reports/01-03-prescriptiondrug.pdf.  The CBO depicted PBMs' role in pharmaceutical

transactions in the following diagram, annotated as relevant for the parties involved:



*Id.*  PBMs thus maintain information that bears on the ultimate prices that, for example, an

insurer member of the putative class in this case actually reimbursed for Exforge.

To obtain this information for a substantial portion of the putative EPP class, Novartis served targeted subpoenas on the three largest PBMs,[2] including Express Scripts.  The subpoena requested the following data that is the subject of this motion:

- **Request No. 1:** Concerning Exforge and generic Exforge,[3] the PBMs' transaction data, discount data, rebates received data and rebates paid out data.[4]

Express Scripts initially objected in full to Request No. 1, North Decl. Ex. B at 2-3, but after negotiations agreed to produce its "book of business" data reflecting reimbursements by the PBMs' clients for Exforge and generic Exforge, *see* North Decl. Ex C, 05.22.2020 Email from S. Zimmerman to C. Kozikowski.  Express Scripts made its production on June 30, 2020.  North Decl. Ex. D, 06.30.2020 Letter from S. Zimmerman to J. North and C. Kozikowski.  However, Express Scripts only produced data that reflects reimbursements for the version of generic Exforge that was manufactured by Par and, without any legitimate basis, did not produce *any* reimbursement data for generic Exforge sold by other manufacturers.[5]  Express Scripts cannot

---

[2] Novartis is continuing to confer over the subpoena responses of the other two PBMs, in the hope that Court intervention can be avoided.  The dispute with Express Scripts, however, is at an impasse.

[3] Exforge is defined as "the product described in NDA. 21-990" and generic Exforge is defined as "any product that is AG-rated to Exforge by the United States Food and Drug Administration".  North Decl. Ex. A at 2.

[4] *See* North Decl. Ex. A at 4-5.  "Transaction data" concerns payments by the PBMs to pharmacies and reimbursements from the PBMs' clients; "discount data" concerns discounts received, as negotiated by the PBMs with pharmacies; "rebates received data" concerns rebates received by the PBMs from manufacturers; and "rebates paid out data" concerns rebates received by the PBMs from manufacturers and passed through to their clients.

[5] Prior to the filing of this motion, Express Scripts informed Novartis that the basis upon which it is withholding the supplemental data is its belief that during negotiations, Novartis agreed to narrow its request to seek only data reflecting reimbursements of versions of Exforge and generic Exforge produced by Novartis and Par, but that belief is inconsistent with the subpoena itself and the numerous discussions between the parties.

withhold such information, which is clearly relevant and responsive to Novartis' subpoena.

Further, Express Scripts has maintained—on grounds of "confidentiality"—its objection to

producing *any* data reflecting Express Scripts' payments to pharmacies, as well as its discount

and rebate data, even for Exforge and generic Exforge that were manufactured by Novartis and

Par, arguing that the information is proprietary and thus is not "discoverable."  North Decl. Ex C.

That objection is unsustainable.  Confidentiality alone is no basis to refuse to produce relevant

information—that is what protective orders are for.

     Moreover, in this case, the Court has repeatedly made such confidentiality protections

available to third parties—entering protective orders that will ensure that the data can be

available to the litigating parties without exposing it publicly.  This Court has in fact already

entered such orders specifically at the request of Express Scripts, as well as other subpoenaed

parties.  *See* ECF 248; *see also* ECF 198 (governing the production and handling of information

produced by third party national wholesalers) and ECF 238 (governing the production and

handling of certain highly confidential documents in the possession of Express Scripts).  Express

Scripts should therefore be compelled to produce the outstanding data.

## II.     LEGAL STANDARD

     "The discovery parameters set forth in Rule 26 also apply to subpoenas served upon

non-parties" like Express Scripts.  *Citizens Union of City of New York v. Attorney General of*

*New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017).  The parties are thus entitled to discovery

from Express Scripts concerning "any non-privileged matter that is relevant to any party's claim

or defense and proportional to the needs of the case, considering the importance of the issues at

stake in the action, the amount in controversy, the parties' relative access to relevant information,

the parties' resources, the importance of the discovery in resolving the issues, and whether the

burden or expense of the proposed discovery outweighs its likely benefit."  FED. R. CIV. P.

26(b)(1); *see also* ECF No. 253 (ordering production of relevant third party documents). Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on any party's claim or defense." *CBF Industria de Gusa S/A v. AMCI Holdings, Inc.*, 13-CV_2581 (PKC) (JLC), 2019 WL 3334503, at *5 (S.D.N.Y. July 25, 2019).

With particular relevance to this dispute, "a subpoena should not be quashed or modified where the court can devise an appropriate accommodation to protect the interests of the witness, such as a protective order or a confidentiality stipulation." *In re Salomon Bros. Treasury Litig.*, No. 91 CIV. 5471 (RPP), 1994 WL 62852, at *2 (S.D.N.Y. Feb. 22, 1994) (internal quotation marks omitted); *see also United States v. Int'l Bus. Machines Corp.*, 83 F.R.D. 97, 99 n.6 (S.D.N.Y. 1979) (denying motion to quash subpoena in part because the existence of a protective order obviated confidentiality concerns).

## III.   ARGUMENT

Express Scripts' data reflecting its reimbursements from clients, payments to pharmacies, negotiated discounts and rebates are plainly relevant, and producing such data would not impose any material burden on Express Scripts; these are not voluminous sets of emails or the like—but rather, data.  There is no asserted privilege.  And Express Scripts' concern about confidentiality can easily be addressed, as it has been for other subpoenaed parties (including Express Scripts itself) by a protective order.  This subpoena was served nearly eight months ago, and there is no basis for Express Scripts to continue to withhold the requested information.

The requested data are highly relevant.  Because PBMs like Express Scripts negotiate prices for their end-payor clients, the *actual* price that those end-payors pay—and here, purport to claim as damages—is directly affected by discounts negotiated with pharmacies and by rebates received and paid out by Express Scripts.  Such data clearly implicate the EPPs' alleged

damages.  The data may also bear on class certification, revealing instances in which members of the putative class may actually have paid *less* for Exforge than they would have paid absent the license agreement between Novartis and Par and instances in which, due to rebate and discount guarantees made by Express Scripts to its clients, it was Express Scripts—and not the EPPs or other end-payors—that may have borne the alleged overcharges for Exforge and its generic.  The data are thus clearly relevant.

The EPPs are attuned to this possibility, and they have attempted to deal with it by excluding *all* PBMs, including Express Scripts, from their class definition.  *See* EPP Compl., ¶ 174(i), ECF No. 25 in 18-cv-05536.  Even if that could be achieved consistent with Rule 23, the question would remain how to accurately exclude any alleged damages borne by PBMs from the class damages model.

Express Scripts cannot prevent that question from being answered by simply claiming "confidentiality" over the data.  Any confidentiality concerns are alleviated by the several protective orders already entered in this case.  *See* ECF Nos. 95, 198, 238, 248.  Indeed, Express Scripts itself sought a protective order earlier in the case, which Defendants promptly agreed to, and which the Court promptly entered (ECF No. 248); it cannot now claim that confidentiality is a basis to refuse wholesale to produce data.  *See Conopco, Inc. v. Wein*, No. 05-Civ-9899 (RCC) (THK), 2007 WL 1040676, at *5 (S.D.N.Y. Apr. 4, 2007) (a document's "confidentiality does not shield it from discovery") (internal quotation marks omitted); *Grumman Aerospace Corp. v. Titanium Metals Corp. of Am.*, 91 F.R.D. 84, 87 (E.D.N.Y. 1981) (confidentiality alone does "not immunize . . . materials from discovery").

Express Scripts has not identified any undue burden associated with producing this data; nor could it, having already produced a larger set of "book of business data" in response to the subpoena.  North Decl. Ex. D.

Moreover, Express Scripts must produce its transaction data for all versions of generic Exforge—including the versions of generic Exforge produced by manufacturers other than Par. EPPs allege that the prices of all generic versions of Exforge (not only the version produced by Par) were inflated as a result of the license agreement between Novartis and Par, and purchases of those other generic versions will be factored into any damages they seek to recover in this case.  There is thus no basis for Express Scripts to distinguish the data by manufacturer, which are relevant for the reasons described above.  Tellingly, Express Scripts never indicated prior to production that it would withhold any such data, having said to the contrary that it would produce its "book of business" data that were responsive to the subpoena, which makes no distinction by manufacturer.  *See* North Decl. Ex. A at 2; Ex. C.

Because the requested data are relevant; because there is no undue burden or privilege issue; and because any confidentiality concerns are easily alleviated given the protective orders entered in this case, the Court should compel Express Scripts to produce all of the withheld data.

## IV.   CONCLUSION

Novartis respectfully requests that this Court grant its motion to compel Express Scripts to produce the data requested in Request No. 1 in Novartis's subpoena.

July 2, 2020                              Respectfully submitted,

                                          CRAVATH, SWAINE & MOORE LLP,

                                              by
                                                  /s/ Julie A. North
                                                  Evan R. Chesler
                                                  Julie A. North

                                              Worldwide Plaza
                                              825 Eighth Avenue
                                              New York, NY 10019
                                              (212) 474-1000
                                              echesler@cravath.com
                                              jnorth@cravath.com

                                              *Attorneys for Defendants Novartis*
                                              *Pharmaceuticals Corporation and Novartis AG*