**GARWIN GERSTEIN & FISHER** LLP

88 Pine Street, 10th Floor, New York, NY 10005 | Telephone: (212) 398-0055 | Fax: (212) 764-6620

| Bruce E. Gerstein | Kimberly M. Hennings | Anna Tydniouk |
| Scott W. Fisher | Elena K. Chan | |
| Joseph Opper | Dan Litvin | |
| Noah H. Silverman | Jonathan M. Gerstein | |

Sender's e-mail: dlitvin@garwingerstein.com

January 26, 2021

**Via ECF**
The Honorable Alvin K. Hellerstein
United States District Court
Southern District of New York
500 Pearl Street, Room 1050
New York, New York 10007

Re:   *In re Novartis and Par Antitrust Litigation*, No. 1:18-cv-04361-AKH, all actions

Dear Judge Hellerstein:

Pursuant to Your Honor's January 15, 2021 Order (ECF No. 324), I write on behalf of all Parties to report on the Parties' agreements and remaining disputes on the subjects of the Order.

## I.   ADDITIONAL DEPOSITIONS

The Parties have made good-faith representations that they presently have no intention to rely upon any testimony (including in the form of a declaration) from any not-yet-deposed witness. Accordingly, other than potential Rule 30(b)(6) depositions of Defendants regarding their data productions as set forth below (for which Plaintiffs will seek court approval if the parties are unable to resolve the remaining data questions), no additional Party fact depositions are required at this time. Defendants intend to take only one additional deposition—a third-party deposition of Kent Rogers, the SVP and Chief Industry Officer of OptumRx, Inc.—which is scheduled to take place on February 4, 2021.

The Parties understand that if there is a change in circumstances, each Party may seek the Court's permission to rely on the testimony of a not-yet-deposed witness, and in such a case, the opposing Parties may take the deposition of the new witness or declarant.

## II.   DATA

Defendants have confirmed that Defendants have produced all data that their experts may rely upon and all data that Defendants may contend is relevant to calculating the net price paid by direct purchasers for brand Exforge purchased from Novartis and/or generic Exforge purchased from Par, including all data that Defendants and their experts may rely upon concerning any adjustments to price or units, such as any credits, discounts, fees, rebates, etc. attributed to/earned by direct purchasers. In addition, Novartis has represented that with the

exception of certain 2015-2016 data that Novartis will produce by Friday, January 29, Novartis has produced all data relevant to its Exforge Co-Pay Card program.

Plaintiffs have questions about some of the data files identified by Defendants and the Parties will continue to meet and confer in good faith regarding any additional data questions or issues that may arise.

### III. SETTLEMENT

The Parties agree that settlement discussions should not take place until after all parties have served expert reports and taken expert depositions.

### IV. SCHEDULE FOR EXPERT REPORTS AND EXPERT DEPOSITIONS

The Parties disagree on a framework for scheduling expert reports and expert depositions. The Parties' respective positions are set forth below:

**A. Plaintiffs' Position**

Plaintiffs' proposed schedule is designed to avoid delay, surprise, prejudice and the need to supplement expert reports based on information Defendants disclose after the service of Plaintiffs' opening reports.

In particular, Plaintiffs' proposal includes a brief period for the parties to continue to meet and confer with respect to their disputes concerning a narrow subset of interrogatories and requests for admission that directly impact the substance of Plaintiffs' opening expert reports. These disputes arose at the end of the fact discovery period and could not have been resolved earlier. Plaintiffs advised the Court of the existence of this issue in the Parties' January 14, 2021 joint agenda.[1]

Local Rules 33.3(b) and (c) mandate that certain Interrogatories be served at the end of fact discovery and "at least 30 days prior to the discovery cut-off date." Accordingly, Plaintiffs served interrogatories and requests for admission on December 9, 2020.[2] Contrary to Defendants' assertion below, at the time that Plaintiffs served their final written discovery requests, their expert reports were due under the applicable order (ECF No. 284) in *two* months, not *one*. Moreover, some of the interrogatories in question were served years ago, and were only

---

[1] *See* January 14, 2021 email from Dan Litvin to Your Honor (as to the question of whether "to revise, and expand or contract the schedule," "Plaintiffs position is that additional time is necessary before expert reports" to "resolve any disputes concerning interrogatories and requests for admissions Plaintiffs served in December, 30 days in advance of the current fact discovery deadline.")

[2] Under the then operative scheduling order, all fact discovery was set to close on January 8, 2021. *See* ECF No. 284.

renewed on December 9, 2020 in accordance with Local Rule 33.3(c) to address Defendants' objections that they were premature when originally served.

In any event, Plaintiffs had no reason to believe that Defendants would continue to refuse to respond entirely to many of these discovery requests on the basis that, *inter alia*, contention interrogatories are premature until after the close of *expert* discovery. The case law in this district provides that contention interrogatories must be answered at the end of *fact* discovery,[3] which is also consistent with the Court's prior rulings.[4] Had Defendants followed these clear precedents and provided substantive responses within 30 days of service (which would have been January 8, 2021), Plaintiffs' experts could have incorporated those responses into their expert reports by February 10, 2021, and there would be no cause for anyone to complain about delay. When the Parties negotiated their prior schedules, Plaintiffs did not anticipate that Defendants would obstruct in this manner.[5]

Plaintiffs have narrowed the written discovery that we are seeking before we serve expert reports. Out of 20 interrogatories served on Par, we believe 6 should be answered before service of our opening expert reports. Out of 26 interrogatories served on Novartis, we believe 7

---

[3] *See, e.g., New Jersey Dep't of Envtl. Prot. v. Atl. Richfield Co. (In re Methyl Tertiary Butyl Ether)*, 2014 U.S. Dist. LEXIS 15966, at *7-9 (S.D.N.Y. February 6, 2014) ("Local Rule of Civil Procedure 33.3(c) 'anticipates that in the normal course, responses to contention interrogatories will be due at the very end of the fact discovery period.'"), *quoting Erchonia Corp. v. Bissoon*, 2011 U.S. Dist. LEXIS 95939, at *24-25 (S.D.N.Y. Aug. 26, 2011) ("The particular timing Rule 33.3(c) recommends — that contention interrogatories be served at least thirty days before the end of discovery but after other discovery has been completed — anticipates that in the normal course, responses to contention interrogatories will be due at the very end of the fact discovery period."); *Tribune Co. v. Purcigliotti*, 1997 U.S. Dist. LEXIS 13165, at *3-4 (S.D.N.Y. September 2, 1997) (rejecting the "argument that the contention interrogatories are premature. Although that assertion was accepted by the Court earlier in this litigation, the fact discovery in this case is near completion and, in any event, is likely to be at an end by the time plaintiffs' responses to the interrogatories are due. There is therefore no basis to delay service of the contention interrogatories. *See* Local Rule 33.3(c)."); *SEC v. Thrasher*, 1995 U.S. Dist. LEXIS 1355, at *44 (S.D.N.Y. February 7, 1995) (contention interrogatories under former Rule 46(c), now Rule 33.3(c), appropriate "after fact depositions have been conducted.").

[4] *E.g.*, Feb. 12, 2020 Discovery Order (ECF No. 233) (holding that Defendants were not required to respond to contention interrogatories "at this stage of the case," *i.e.*, prior to depositions, and directing Plaintiffs to take depositions instead); September 24, 2019 Hearing Tr. at 16:6-14 (ECF No. 217) (rejecting notion that Defendants should respond to interrogatories "up front," prior to depositions).

[5] Defendants' assertion below that Plaintiffs did not apprise Defendants of this potential dispute until after the January 21, 2021 meet and confer is wrong. Not only was the issue raised in the Parties' January 14, 2021 joint agenda submitted to the Court by email, but Plaintiffs raised this issue during the meet and confer and Defendants stated that they would prefer for Plaintiffs to identify the subset of discovery requests at issue in writing after the meet and confer.

should be answered before service of our opening expert reports. We have also narrowed our Requests for Admission to 31 to Par, and 37 to Novartis.[6]

This written discovery cannot fairly wait until Defendants serve their own expert reports as Defendants suggest. The issues addressed by this discovery concern Defendants' contentions and key factual issues in the case relevant to the expert reports that Plaintiffs will be serving.

For example, Plaintiffs' interrogatories ask Defendants to identify the "reasons, explanations, business justifications, and/or procompetitive justifications that [they] held when [they] agreed to" the challenged no-AG provision. Defendants certainly know why they entered into the no-AG agreement and whether it was for an allegedly procompetitive reason without any input from their experts. And, under the governing law, it is Defendants' burden to prove procompetitive justifications (if any) for the reverse payment. *See FTC v. AbbVie Inc.*, 976 F.3d 327, 355 (3d Cir. 2020) ("because the defendants had the burden of justifying a reverse payment, *Actavis* did not 'require antitrust plaintiffs to come up with possible explanations for the reverse payment and then rebut those explanations.'") (quoting *In re Lipitor Antitrust Litig.*, 868 F.3d 231, 256-57 (3d Cir. 2017)); *In re Namenda Direct Purchaser Antitrust Litig.*, 2019 U.S. Dist. LEXIS 204827, at *12 (S.D.N.Y. Aug. 2, 2019) ("The issue with the [reverse payment] is whether it represented 'fair value for services,' or, instead, an inducement to Mylan to delay its generic version of Namenda (*which [Defendant] has the burden to prove* under *Actavis*)"). (Emphasis added).

As another example, Plaintiffs asked Par to identify each of its prior "at-risk"[7] launches and the circumstances surrounding those launches, because one of Plaintiffs' causation theories is that absent the challenged reverse payment, Par would have launched its competing products at risk without a patent license. To date, Par has pointed to a single instance of an at-risk launch that it claims was unsuccessful because Par ultimately had to pay patent infringement damages because of it. But Par's entire history with "at-risk" launches is clearly relevant to whether this example was an aberration and to establish Par's willingness to launch at risk in this case.

As a final example, Plaintiffs' RFAs address patent-related issues relevant to whether there was any patent issue that would have prevented Par from launching its generic product in the absence of the challenged no-AG agreement. Responses to these RFAs are necessary so that Plaintiffs' experts can address the patent-related defenses that Defendants intend to raise, rather than merely guessing at them.

Plaintiffs' experts should be allowed to consider the entirety of the relevant fact discovery record in formulating their opinions, and to focus their opinions on the actual defenses and arguments that Defendants intend to press. Plaintiffs should not be forced to wait to find out

---

[6] Plaintiffs do not waive the right to seek responses to the remainder of their Interrogatories or Requests for Admission, but are not seeking to compel further responses to these other Interrogatories or Requests for Admissions at present.

[7] A product launch prior to a determination that a brand's patent was invalid or not infringed, or prior to any license of the patent.

this key information until Defendants serve their expert reports. If answers to discovery requests are deferred on these key issues until after Plaintiffs serve their expert reports, and the Defendants provide responses that would alter or affect the analyses of Plaintiffs' experts, Plaintiffs will be prejudiced and will need to supplement the affected expert reports. Defendants would then likely argue that they would need to supplement their own expert reports, and both sides might subsequently seek to reopen expert depositions. Such an approach is likely to create far more delay than taking the time to resolve these discovery disputes now so that Plaintiffs' experts have the information that they need to formulate their opinions.

Accordingly, Plaintiffs' proposed schedule provides for a continued meet and confer on the written discovery necessary before expert discovery commences, followed by a condensed briefing schedule to resolve any disputes, if necessary.

Plaintiffs' schedule also proposes that all expert depositions commence after all expert reports have been fully submitted by both sides. Although the Court has previously ruled that Plaintiffs may "seek leave to submit an additional expert report" to respond to an assertion raised in Defendants' reports (ECF No. 212 at 2), the Court has not granted Plaintiffs the ability to serve reply reports as of right. It would be manifestly unfair for Defendants to obtain the tactical benefit of cross-examining Plaintiffs' experts before disclosing their own expert reports without Plaintiffs having an equivalent right to incorporate cross-examination of Defendants' experts in the reports of Plaintiffs' experts. Defendants' proposed schedule should also be rejected because it fails to permit any time for Plaintiffs to depose Defendants' experts after receipt of their reports.

Finally, Plaintiffs' proposed schedule further provides time to resolve any outstanding data issues. In contrast, Defendants' proposal calls for Plaintiffs to submit expert reports just 9 days after the completion of the meet and confer concerning Defendants' data productions (*see* Jan. 14 Hearing Transcript at 7:21 -10:22 (directing the parties to spend a month meeting and conferring on issues concerning Defendants' data) without any guarantee that Plaintiffs' questions will have been addressed and without Plaintiffs having any opportunity to take data-related Rule 30(b)(6) depositions.[8]

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

[8] Defendants have objected to Plaintiffs "unilaterally" notifying the Court on Friday that the Parties would need until this Monday to submit a joint letter. They fail to note, however, that Plaintiffs had advised Defendants that since Defendants had not provided language for their portion of this letter, and therefore, the Parties had not reached an agreement by close to 7:00 pm Friday night, we intended to inform the Court as a courtesy not to expect the letter until Monday. The Court's January 15, 2021 Order expressly permitted the Parties to "submit [this letter] to me for approval, on January 22, 2021, or as soon thereafter as possible."

| PLAINTIFFS' PROPOSED SCHEDULE | |
|---|---|
| EVENT | DATE |
| Meet and confer on subset of Interrogatories and Requests for Admission that are likely to impact expert opinions | January 29, 2021 |
| If necessary, joint letter to Court on whether Defendants should be compelled to respond to Interrogatories and Requests for Admission that are likely to impact expert opinions | February 12, 2021 |
| Plaintiffs Serve Expert Reports | 30 days following the last to occur of:<br><br>(1) Defendants' responses to certain Interrogatories and Requests for Admission; OR<br><br>(2) The Court's denial of any motion to compel responses to certain Interrogatories and Requests for Admission |
| Defendants serve expert reports | 75 days after Plaintiffs serve expert reports |
| Expert depositions | Within 60 days following service of Defendants' expert reports. To the extent possible based upon the experts' schedules, Plaintiffs' experts should be deposed prior to Defendants' experts. |
| Status/Settlement Conference | 90 days after Plaintiffs serve expert reports |

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

### B. Defendants' Position

Defendants propose a two-week extension of the Court's current scheduling order (ECF No. 284) for the submission of Plaintiffs' opening expert reports, the submission of Defendants' expert reports, and the next status/settlement conference. Contrary to Plaintiffs' proposal—which contemplates an extensive delay prior to the start of expert discovery and a complete restructuring of the Court's prior scheduling order—Defendants' proposal seeks to move this case forward as quickly as possible without causing the Plaintiffs any prejudice whatsoever, while staying as consistent as possible with the prior scheduling order, which the Parties negotiated in good faith and upon which all Parties have been relying. Defendants' productions are complete other than a limited dataset regarding the Exforge Co-pay Card Program, which Novartis will produce by January 29, 2021. Plaintiffs suggest that they will ask Defendants additional questions about certain data files—all of which were produced prior to depositions. Defendants will respond to those questions in good faith—as they have in the past—but they should not cause delay. And as noted above, Defendants intend to take only one additional third-party deposition that will occur on February 4, 2021. Plaintiffs do not need much, if any, additional time to incorporate this limited additional fact discovery into the reports of whichever of their experts (if any) intend to add it. The Parties can and should proceed to expert discovery as quickly as possible.

Rather than accept a brief extension to address the issues they raised with the Court at the status conference, Plaintiffs inserted a new issue into the Court-directed meet and confer that they now assert requires even more delay. As a result of this new issue, Plaintiffs declined to submit an appropriate joint submission to the Court on Friday, January 24, and instead unilaterally wrote the Court to insist that more time was necessary for the Parties to make a joint submission on the expert discovery schedule. No additional time was necessary, however, because the Parties met and conferred on the matters that the Court directed, and the Parties had no outstanding issues that needed discussion *on those matters*. The Court directed the Parties to meet and confer on three issues: (1) whether the Parties had the present intent to rely upon additional witnesses, (2) whether data production was complete, and (3) when mediation should occur. (These were the only issues Plaintiffs raised with the Court at the recent status conference.) The Court then directed the Parties to propose a new schedule based on any delays caused by those three issues. Defendants made the representations directed by the Court, and based on these representations, it became apparent that only a brief extension for expert reports was needed.

The only reason the Parties did not make a joint submission proposing such a limited change to the schedule on Friday is that on Thursday at 9 PM the Plaintiffs—for the first time—disclosed a list of 81 interrogatory and request for admission responses that they insisted should be briefed for the Court prior to setting an appropriate schedule for expert discovery.[9] As the

---

[9] Although Plaintiffs claim they raised the dispute regarding responses to the interrogatories and requests for admission prior to the January 14, 2021 conference, they did so only generally, without specifying which responses were at issue. Plaintiffs then proceeded not to raise the responses (even generally) at the conference itself and did not provide Defendants with the

Court will see below, there is no reason to extend the current expert discovery schedule more than a couple weeks based on the issues the Court directed the Parties to address in this submission.  Accordingly, for the reasons described below, Defendants request that the Court set an orderly schedule for disclosure of expert witnesses to begin next month.

Plaintiffs claim that they need additional time prior to expert discovery to meet and confer and potentially seek to compel responses from Defendants regarding certain responses to dozens of interrogatories and requests for admission, including requests which Plaintiffs first served just prior to the holidays in December 2020—with full knowledge that their expert reports were due (by the Court's order) approximately one month after the date objections were due. Plaintiffs made a strategic decision designed to delay the expert discovery period.  In fact, despite having Defendants' responses to the interrogatories and requests for admission since January 8, 2021, Plaintiffs failed to raise any issues concerning those responses with the Court at the conference on January 14, 2021 and in fact failed to communicate any specific disputes to the Defendants until the evening of Thursday, January 21, hours *after* the Parties' meet and confer. This eleventh-hour tactic should not be permitted to disrupt the orderly procedure for expert discovery that the Court previously ordered.

Moreover, Plaintiffs have mischaracterized Defendants' objections to their interrogatories and requests for admission as simply a dispute about the meaning of the Local Rules.  But in addition to Defendants' objections on the basis of Local Rule 33.3, Defendants *also* objected to the requests identified by Plaintiffs on other grounds, including to the vast majority of the requests on the grounds that they seek: (i) to force Defendants to disclose prematurely their own experts' opinions or legal contentions, which this Court has ruled at least two prior times is inappropriate through written discovery (*see* September 24, 2019 Hearing Tr. at 13:3-10, 16:12-23 (ECF No. 217) and February 12, 2020 order (ECF No. 233)); (ii) information that Plaintiffs have already sought during deposition testimony, and/or (iii) information protected by the attorney-client privilege or work-product doctrine.

Plaintiffs should not be permitted additional time for discovery to try once again to flip the Parties' obligations under the Court's prior orders, which have repeatedly set the deadline—with Plaintiffs' consent, of course—for Plaintiffs' expert reports prior to the deadline for Defendants' expert reports (*see* ECF Nos. 212, 217 at 9:5-25, 220, 241 and 284).  Plaintiffs have had the vast majority of Defendants' documents, communications and data for over a year, and have taken over 90 hours of deposition testimony from Defendants' fact and 30(b)(6) witnesses. Plaintiffs could have, and did, ask Defendants several of these questions at fact and 30(b)(6) depositions and have a sufficiently complete fact record for their expert reports.  For instance, Plaintiffs complain that Defendants did not answer an interrogatory about the "reasons, explanations, business justifications, and/or procompetitive justifications that [they] held when [they] agreed to" the agreement at issue in this case.  But Plaintiffs have already spent hours asking these exact questions to the fact witnesses most involved with these negotiations.  So too with Plaintiffs' complaint that they have not received a response about Par's prior "at-risk"

---

specific responses at issue until *more than a week* after the conference—at 9 PM on January 21, 2021—the evening before the joint letter was due.

launches. Plaintiffs sought this information in a number of depositions, including in 30(b)(6) testimony, in which Par agreed to testify about "factual matters regarding Par's right, ability, or willingness to market a Generic Exforge Product without a license to Novartis's patents."[10] Indeed, Plaintiffs admit that they received information about the prior at-risk launch of one product. It is obvious, therefore, that Plaintiffs do not seek factual information on these issues, but rather seek to force Defendants to preview their legal contentions about why the agreement was pro-competitive or about causation.

The remaining discovery Plaintiffs seek is either privileged or is appropriately the subject of expert testimony, which will be disclosed in Defendants' expert reports—once Defendants' experts have had the opportunity to review the expert reports of Plaintiffs, who bear the burden of proof. Included in the 81 interrogatories and requests for admission Plaintiffs identified are a multitude of patent-related questions nearly identical to discovery this Court already rejected multiple times as improper attempts to "advance the dates of expert disclosures". (ECF No. 309.) Indeed, Plaintiffs even asked Defendants to supplement their answers to Interrogatories this Court already said were improper before expert discovery, on the sole basis that "fact" discovery is now closed. The last time those interrogatories were before the Court, the Court directed Defendants to provide a limited set of information about the patent claims that the Court agreed was proper before expert discovery. Defendants did so, and Plaintiffs have all the patent-related information they are entitled to prior to receiving Defendants' expert reports. Thus, a two-week extension of the deadline for the submission of Plaintiffs' expert reports (until February 24, 2021) is appropriate. Yet another attempt by Plaintiffs to compel Defendants to respond to the same categories of improper interrogatories should not further delay the commencement of expert discovery. Plaintiffs have retained their experts and have had several months to prepare their expert disclosures, and they present no good reason at this eleventh hour to upend the case schedule entirely so that they can file yet another motion to compel the same improper discovery.

Plaintiffs also want to upend the current schedule for expert depositions, forcing Defendants to wait to take those until after Defendants serve their own reports, despite the Federal Rules permitting such depositions of experts anytime "after the report is provided." Fed. R. Civ. P. 26(b)(4)(a). There is nothing "manifestly unfair" about following the Federal Rules and permitting Defendants to depose Plaintiffs' experts prior to submission of their own reports given that Defendants will already have access to Plaintiffs' expert opinions in advance as summarized in their reports.[11]

---

[10] Plaintiffs also objected to answering a number of Defendants' interrogatories on the same ground that "deposition testimony [was] already provided pursuant to Fed. R. Civ. P. 30(b)(6)." Direct Purchaser Plaintiffs' Objections and Responses to Defendants' Second Set of Interrogatories.

[11] To the extent the Court disagrees that Defendants should be permitted to depose Plaintiffs' experts prior to submission of Defendants' experts reports, Defendants respectfully request that the Court permit Defendants to depose Plaintiffs' experts before Plaintiffs depose Defendants' experts upon the submission of both sets of reports, to which Plaintiffs have agreed.

In sum, Defendants respectfully submit that a two-week extension to the Court's most recent scheduling order is appropriate. Defendant's proposed schedule is as follows:

- Plaintiffs will serve opening class and merits expert reports by February 24, 2021;

- Defendants will serve rebuttal class and merits expert reports by May 12, 2021; and

- The Parties will have a status/settlement conference on May 20, 2021.[12]

                Respectfully,

                */s/ Dan Litvin*
                Dan Litvin

cc: All counsel (via ECF)

---

[12] Plaintiffs complain that Defendants' schedule does not include an end date for expert deposition discovery. Defendants are simply following the structure from the current scheduling order and expect that the timing for remaining expert discovery would be one of the topics of the status conference on May 20, 2021, along with the timing for class certification briefing, which the Court has asked the Parties to omit from this submission. If the Court wishes to set a date at this time, the current schedule provides 35 days between Defendants' expert report deadline and Plaintiffs' class certification brief deadline, during which time Plaintiffs could take the depositions of Defendants' experts.