**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE: NOVARTIS AND PAR ANTITRUST LITIGATION**<br><br>**THIS DOCUMENT RELATES TO:**<br>**All End-Payor Actions** | **Case No. 1:18-cv-04361 (AKH)** |

**END-PAYOR PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR:**

    **(a) PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT;**

    **(b) CERTIFICATION OF SETTLEMENT CLASS;**

    **(c) APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVES;**

    **(d) PRELIMINARY APPROVAL OF PLAN OF ALLOCATION;**

    **(e) APPROVAL OF FORM AND MANNER OF NOTICE TO CLASS;**

    **(f) APPOINTMENT OF SETTLEMENT ADMINISTRATOR AND ESCROW AGENT; AND**

    **(g) PROPOSED SCHEDULE FOR FAIRNESS HEARING.**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

I.  INTRODUCTION ................................................................................................................1

II.  BACKGROUND ................................................................................................................2

    A.  End-Payor Plaintiffs' Claims and Procedural Background ....................................2

    B.  Settlement Negotiations and the Proposed Settlement .............................................3

III.  ARGUMENT ....................................................................................................................4

    A.  The Requirements for Certification of a Settlement Class Have Been Met ...........4

        1.  All Requirements of Rule 23(a) Are Satisfied ..............................................6

            (a)  Numerosity ........................................................................................7

            (b)  Commonality ......................................................................................7

            (c)  Typicality ...........................................................................................8

            (d)  Adequacy of Representation .............................................................10

        2.  All Requirements of Rule 23(b)(3) Are Satisfied ......................................11

            (a)  Common Issues Predominate as to the Antitrust Violation ...........12

            (b)  Common Issues Predominate as to Injury .....................................12

            (c)  Common Issues Predominate as to Damages ................................14

            (d)  A Class Action is Superior to Other Methods of Adjudication .....15

    B.  The Proposed Settlement Meets the Standard for Preliminary Approval .............16

        1.  The Settlement is Procedurally Fair ...........................................................17

        2.  The Settlement is Substantively Fair ..........................................................18

            (a)  Costs, Risks, and Delay of Trial and Appeal ................................19

            (b)  Range of Reasonableness of the Settlement Fund .........................21

|   |   | (c) | The Proposed Plan of Allocation is Effective, Fair and Reasonable .................................................................. 22 |
|   |   | (d) | The Terms of Any Proposed Award of Attorney's Fees ............... 24 |
|   |   | (e) | Any Agreement Required to Be Identified Under Rule 23(e)(3) .................................................................. 24 |
|   | 3. | | The Plan of Allocation Treats Settlement Class Members Equally .......... 25 |
|   | 4. | | The Proposed Settlement Satisfies Other Relevant Factors ...................... 25 |
|   |   | (a) | Stage of Proceedings ...................................................... 25 |
|   |   | (b) | Defendants' Ability to Withstand a Greater Judgment ................ 26 |
|   |   | (c) | Scope of the Release ....................................................... 26 |
| C. | | | The Proposed Form and Manner of Notice Are Appropriate ............................... 27 |
| D. | | | Angeion Group, LLC is an Appropriate Settlement Administrator ..................... 28 |
| E. | | | Huntington National Bank is an Appropriate Escrow Agent ............................... 29 |
| F. | | | The Proposed Schedule is Fair .......................................................... 29 |
| IV. | CONCLUSION ............................................................................................ 31 |

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. MDL No. 1775, 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009)......................22

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  No. 06–MD–1175, 2014 WL 7882100 (E.D.N.Y. Oct. 15, 2014), *rpt. and rec.*
  *adopted*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015)........................................8, 9

*Allen v. Dairy Farmers of Am., Inc.*,
  No. 5:09–cv–230, 2011 WL 1706778 (D. Vt. May 4, 2011)..................................16

*In re Am. Int'l Grp. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012)................................................................................4, 6

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)...................................................................................4, 11, 15

*In re AOL Time Warner, Inc.*,
  No. 02 Civ. 5575, 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)...............................25

*In re Austrian and German Bank Holocaust Litig.*,
  80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche*
  *Bank*, 236 F.3d 78 (2d Cir. 2001) ...................................................................17, 18

*Banyai v. Mazur*,
  205 F.R.D. 160, 163 (S.D.N.Y. 2002) ....................................................................7

*Beach v. JPMorgan Chase Bank, Nat'l Ass'n*,
  No. 17-CV-563, 2019 WL 2428631 (S.D.N.Y. June 11, 2019) ...............................7

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
  429 U.S. (1977) ....................................................................................................12

*In re Carbon Black Antitrust Litig.*,
  No. Civ.A.03–10191, 2005 WL 102966 (D. Mass. Jan. 18, 2005) ........................10

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) .......................................................................20

*Charron v. Pinnacle Grp. N.Y. LLC*,
  874 F. Supp. 2d 179 (S.D.N.Y. 2012)...................................................................22

*Christine Asia Co. v. Yun Ma*,
    No. 1:15-md-02631, 2019 WL 5257534  (S.D.N.Y. Oct. 16, 2019) ...............................16, 17

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)........................................................................... *passim*

*Consol. Rail Corp. v. Hyde Park*,
    47 F.3d (2d Cir. 1995).................................................................................7

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007)............................................................................ *passim*

*In re Currency Conversion Fee Antitrust Litig.*,
    263 F.R.D. 110 (S.D.N.Y. 2009) ...................................................................20

*In re Currency Conversion Fee Antitrust Litig.*,
    No. 01 MDL 1409, 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ...................16, 22

*DeMarco v. Nat'l Collector's Mint, Inc.*,
    229 F.R.D. 73 (S.D.N.Y. 2005) ....................................................................7

*Dial Corp. v. News Corp.*,
    314 F.R.D. 108 (S.D.N.Y. 2015), *amended,* 2016 WL 690895 (S.D.N.Y. Feb.
    9, 2016) ....................................................................................................8, 12, 13

*In re EpiPen (Epinephrine Injection, USP) Mkt'g, Sales Practices & Antitrust
    Litig.*, MDL No. 2785, 2020 WL 1180550 (D. Kan. Mar. 10, 2020) .......................6

*In re EpiPen (Epinephrine Injection, USP) Mkt'g, Sales Practices & Antitrust
    Litig.*, No. 2:17-md-02785, ECF No. 2590-1 (D. Kan. Feb. 28, 2022) ...................29

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
    2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................16

*Feliciano v. Corelogic Rental Prop. Sols., LLC*,
    332 F.R.D. 98 (S.D.N.Y. 2019) .....................................................................7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009)..........................................................................8

*Fleisher v. Phx. Life Ins. Co.*,
    Nos. 11-cv-8405, 14-cv-8714, 2015 WL 10847814 (S.D.N.Y. Sep. 9, 2015) ...........19, 20, 26

*FTC v. Actavis, Inc.*,
    570 U.S. 136 (2013).....................................................................................2, 4

*In re Global Crossing Secs. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ...............................................................18, 19, 20

iv

*In re Hi-Crush Partners L.P. Sec. Litig.*,
   No. 12–Civ–8557, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)..........................................22

*Karvaly v. eBay, Inc.*,
   245 F.R.D. 71 (E.D.N.Y. 2007) ...................................................................................18

*Langan v. Johnson & Johnson Consumer Cos., Inc.*,
   897 F.3d 88 (2d Cir. 2018).........................................................................................12

*In re Lidoderm Antitrust Litig.*,
   No. 14-md-02521, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017)..........................................6, 8

*In re Loestrin Fe Antitrust Litig.*,
   410 F. Supp. 3d 352 (D.R.I. 2019)..................................................................................6

*McReynolds v. Richards–Cantave*,
   588 F.3d 790 (2d Cir. 2009).........................................................................................17

*Morris v. Affinity Health Plan, Inc.*,
   859 F. Supp. 2d 611 (S.D.N.Y. 2012)..............................................................................17

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950).....................................................................................................27

*In re Namenda Indirect Purchaser Antitrust Litig.*,
   338 F.R.D. 527 (S.D.N.Y. 2021) ...................................................................... *passim*

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ...................................................................................21

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   169 F.R.D. 493 (S.D.N.Y. 1996) ............................................................................10, 14

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   297 F.R.D. 168 (D. Mass 2013), *aff'd*, 777 F.3d 9 (1st Cir. 2015)................................6, 8, 10

*Nichols v. Noom, Inc.*,
   20-CV-3677, 2022 WL 2705354 (S.D.N.Y. July 12, 2022)...................................................15

*In re Opana ER Antitrust Litig.*,
   MDL No. 2580, 2021 WL 3627733 (N.D. Ill. June 4, 2021), *as modified* ECF
   No. 746 (N.D. Ill. Aug. 11, 2021)................................................................................6, 10

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019)..........................................................................19, 22, 23, 26

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   986 F. Supp. 2d 207 (E.D.N.Y. 2013) ..............................................................................20

*Puddu v. 6D Glob. Techs.*,
   15-cv-8061, 2021 WL 1910656 (S.D.N.Y. May 12, 2021) ...................................................17

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
   338 F.R.D. 294 (D. Mass. 2021) ...................................................................................6, 14

*Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*,
   237 F.R.D. 26 (E.D.N.Y. 2006) ......................................................................................18

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
   335 F.R.D. 1 (E.D.N.Y. 2020) ................................................................................. *passim*

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015) ............................................................................................11

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   No. 1:14-md-02503, ECF No. 1145 (D. Mass. Apr. 5, 2018) .................................................29

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
   No. 14-md-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017) ......................................6, 8, 9

*State of W. Va. V. Chas. Pfizer & Co.*,
   314 F. Supp. 710 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971) ..............................21

*In re Stock Exchs. Options Trading Antitrust Litig.*,
   No. 99 Civ.0962, 2005 WL 1635158 (S.D.N.Y. July 8, 2005) ......................................16, 17

*In re Terazosin Hydrochloride Antitrust Litig.*,
   220 F.R.D. 672 (S.D. Fla. 2004) .......................................................................................9

*Teva Pharms. USA, Inc. v. Abbott Labs.*,
   252 F.R.D. 213 (D. Del. 2008) ..........................................................................................7

*In re Visa Check/MasterMoney Antitrust Litig*,
   280 F.3d 124 (2d Cir. 2001) ............................................................................................10

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) .....................................................................................................7

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ........................................................................................16, 26

*In re Warner Chilcott Ltd. Sec. Litig.*,
   No. 06-cv-11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008).........................................19

*In re WorldCom, Inc. Sec. Litig.*,
   388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..........................................................................22, 23

*In re Zetia (Ezetimibe) Antitrust Litig.*, MDL No. 2:18-md-2836,
    2020 WL 5778756 (E.D. Va. Aug. 14, 2020), *rep. & rec. adopted* 2021 WL
    3704727 (E.D. Aug. 20, 2021)......................................................................................6

## Statutes

28 U.S.C. § 1715.............................................................................................................30

## Other Authorities

Fed. R. Civ. P. 12(b)(6).....................................................................................................2

Fed. R. Civ. P. 23 ...................................................................................................... *passim*

*Manual for Complex Lit., Fourth*, at § 21.312................................................................27

*Newberg on Class Actions* § 11.41 (4th ed. 2002)........................................................25

*Newberg on Class Actions* § 3.58 (5th ed. 2021)..........................................................18

End-Payor Plaintiffs UFCW Local 1500 Welfare Fund and Law Enforcement Health

Benefits, Inc. (collectively, the "End-Payor Plaintiffs," "EPPs," or "Named Plaintiffs"),

respectfully submit this Memorandum of Law in Support of their Unopposed Motion for (a)

Preliminary Approval of Proposed Settlement, (b) Certification of Settlement Class, (c)

Appointment of Class Counsel and Class Representatives, (d) Preliminary Approval of Plan of

Allocation, (e) Approval of Form and Manner of Notice to Class, (f) Appointment of Settlement

Administrator and Escrow Agent, and (g) Proposed Schedule for Fairness Hearing.

## I.     INTRODUCTION

End-Payor Plaintiffs and Novartis Pharmaceuticals Corporation and Novartis AG

(collectively "Novartis") have reached a settlement by which Novartis will pay $30,000,000.00

in cash into an escrow fund for the benefit of all members of the class (the "Class" or

"Settlement Class") as defined below at § III.A., in exchange for dismissal of the litigation

between End-Payor Plaintiffs and Novartis with prejudice and certain releases (the

"Settlement"). All the terms of the Settlement are set forth in the Settlement Agreement, dated

February 10, 2023 ("Settlement Agreement") (annexed as Exhibit 1 to the Declaration of Robin

A. van der Meulen (the "van der Meulen Decl.")).

The Settlement Agreement was negotiated at arm's length by counsel experienced in

antitrust class actions and pharmaceutical antitrust litigation and is an excellent result for the

Settlement Class. The Settlement assures immediate relief and avoids the potential risks and

delay of trial and appeals—a significant benefit to the Settlement Class. Accordingly, the Court

should find that the Settlement is fair, adequate, and reasonable and enter an Order granting

preliminary approval of the Settlement Agreement, certifying the Settlement Class, and

appointing DiCello Levitt LLC as Class Counsel and appointing Named Plaintiffs as Class

Representatives, preliminarily approving the Plan of Allocation, approving the form and

manner of Notice to the Class, appointing Angeion Group, LLC ("Angeion") as Settlement Administrator and Huntington National Bank as Escrow Agent, and scheduling a final Fairness Hearing.

## II.  BACKGROUND

### A.  End-Payor Plaintiffs' Claims and Procedural Background

In 2018, End-Payor Plaintiffs filed their consolidated amended complaint ("CAC") on behalf of all end payor purchasers challenging Novartis's conduct regarding the prescription pharmaceutical Exforge, a prescription drug used to treat hypertension. *See UFCW Local 1500 Welfare Fund v. Novartis Pharm. Corp., et al.*, No. 1:18-cv-05536-AKH, ECF No. 25 (S.D.N.Y. July 17, 2018). End-Payor Plaintiffs alleged that Novartis and generic drug maker Par Pharmaceutical, Inc. ("Par") entered into an unlawful "reverse payment" agreement to delay the entry of generic competition to brand-name drug Exforge. *See FTC v. Actavis, Inc.*, 570 U.S. 136 (2013). In that agreement, Par agreed not to launch a generic version of Exforge until September 30, 2014, and Novartis in turn agreed not to compete with Par by launching its own generic version of Exforge for the 180-day regulatory exclusivity period following Par's entry to the market. *See* CAC ¶ 1.

After EPPs largely defeated Novartis's and Par's Rule 12(b)(6) motions, the case proceeded through extensive fact and expert discovery, including producing and reviewing of millions of pages of party and third-party documents and preparing for, conducting, and/or defending 40 fact and expert depositions. EPPs prevailed on several discovery-related disputes (*e.g.*, ECF Nos. 167, 253).[1]

---

[1] All citations to "ECF No." shall refer to the docket in *In re Novartis and Par Antitrust Litigation*, No. 1:18-cv-04361-AKH (S.D.N.Y.), unless otherwise stated.

At the Court's suggestion (Aug. 4, 2021 Hearing Tr. at 63:25-64:2), Plaintiffs submitted a privilege waiver/preclusion motion, arguing that Novartis placed legal advice "at issue" by asserting defenses that relied on subjective beliefs implicating legal advice. ECF No. 357. This motion, which was fully briefed at the time of settlement, had the potential, if granted, to substantially narrow Novartis's available defenses.

Further, between January 11 and February 1, 2022, End-Payor Plaintiffs submitted *Daubert* motions on four narrowly-tailored subjects and opposed seven of Novartis's *Daubert* motions. On March 15 and April 29, 2022, respectively, End-Payor Plaintiffs moved for class certification and filed their class certification reply brief. ECF Nos. 495, 511. On June 23, 2022, End-Payor Plaintiffs opposed Defendants' two motions for summary judgment on causation and the statute of limitations. ECF Nos. 550, 551.

On August 17, 2022, Par filed a "Suggestion of Bankruptcy" Notice with the Court. ECF No. 579. With only Defendant Novartis remaining, End-Payor Plaintiffs began preparing for trial scheduled for January 9, 2023. ECF No. 379. To that end, Plaintiffs served on Novartis proposed jury instructions, a proposed verdict sheet, proposed fact stipulations, a proposed *voir dire*, and a draft joint final pretrial order. Plaintiffs also began drafting and compiling trial exhibit lists, deposition designations, and motions *in limine*.

B.    **Settlement Negotiations and the Proposed Settlement**

Amidst significant trial preparations, End-Payor Plaintiffs and Novartis agreed to mediation with Eric D. Green. The mediation was held on November 15, 2022, and lasted a full day. The settlement negotiations between Class Counsel and attorneys for Novartis were at all times hard fought and at arm's-length. In conducting negotiations, Class Counsel took into account their extensive experience litigating similar delayed generic entry cases, the pending

class certification, summary judgment and *Daubert* motions before the Court, the Supreme

Court's decision in *Actavis* and its progeny, and the opinions issued by this Court over the course

of the five-year litigation.

Under the proposed Settlement, Novartis will pay $30,000,000.00 in cash into an escrow

fund for the benefit of all members of the Settlement Class in exchange for, among other things,

dismissal of the litigation between End-Payor Plaintiffs and Novartis with prejudice and releases

of certain claims against Novartis by End-Payor Plaintiffs and the Settlement Class.

## III.    ARGUMENT

### A.    The Requirements for Certification of a Settlement Class Have Been Met

End-Payor Plaintiffs and Novartis have agreed, subject to the Court's approval, to the

certification of the proposed End-Payor Class for purposes of settlement. The requirements of

Rule 23 do not change when certification is requested pursuant to settlement, except that "a

district court . . . need not inquire whether the case, if tried, would present intractable

management problems, for the proposal is that there be no trial." *In re Am. Int'l Grp. Sec. Litig.*,

689 F.3d 229, 239 (2d Cir. 2012) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620

(1997)). Thus, the Court must still assess "whether the proposed class satisfies Rule 23(a)'s four

threshold requirements" of: (1) whether "the class is so numerous that joinder of all members is

impracticable," (2) whether "there are questions of law or fact common to the class," (3) whether

"the claims or defenses of the representative parties are typical of the claims or defenses of the

class," and (4) whether "the representative parties will fairly and adequately protect the interests

of the class." *In re Am. Int'l Grp. Secs. Litig.*, 689 F.3d at 238. The district court must also

determine whether the action can be maintained under Rule 23(b)(1), (2), or (3). *Id.*

Here, the proposed Settlement Class is defined as follows:

With respect to indirect prescription purchases of Exforge and/or its AB-rated generic equivalents (the "Products") taking place between September 21, 2012 through June 30, 2018 (the "Class Period") in the District of Columbia, Arizona, California, Florida, Hawaii, Iowa, Maine, Michigan, Minnesota, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, South Dakota, Utah, Vermont, West Virginia, or Wisconsin:

i.      All entities that purchased, paid for, and/or provided reimbursement for some or all of the purchase price of the Products for consumption by their members, enrollees or insureds; and

ii.     All individuals that purchased or paid for some or all of the purchase price of the Products without a) using a Novartis co-pay coupon or voucher while uninsured, or b) using a co-pay coupon or voucher provided by Novartis that reduced their out-of-pocket payment to less than $15.00 while insured.

Excluded from the Settlement Class are the following:

(a)     Defendants and their counsel, officers, directors, management, employees, subsidiaries, or affiliates;

(b)     all federal and state governmental entities (with the exception of cities, towns, municipalities, or counties with self-funded prescription drug plans);

(c)     all persons or entities who purchased Exforge for purposes of resale or directly from defendants or their affiliates;

(d)     fully-insured health plans (plans that purchased insurance from another third-party payor covering 100 percent of the plan's reimbursement obligations to its members);

(e)     flat co-payors (consumers covered by plans applying the same fixed dollar co-payment to both branded and generic Exforge;

(f)     consumers who purchased only generic amlodipine valsartan (and not branded Exforge) under a plan that required them to make a fixed dollar copayment;

(g)     pharmacy benefit managers;

(h)     persons or entities purchasing only branded Exforge after September 30, 2014, and not amlodipine valsartan;

(i)     all counsel of record; and

(j)        the court, court personnel and any member of their immediate families.

Settlement Agreement § 1.

Courts routinely certify end-payor classes alleging anticompetitive conduct under various state laws.[2]

### 1.        All Requirements of Rule 23(a) Are Satisfied[3]

Rule 23 was designed to facilitate the classwide adjudication of similar claims and to achieve economies of time, effort, and expense while promoting uniformity of decision as to all those similarly situated. Certification of a settlement class must satisfy the requirements of Rule 23(a). *See In re Am. Int'l Grp. Sec. Litig.*, 689 F.3d at 243. Rule 23(a) permits an action to be maintained as a class action if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

---

[2] *See, e.g.*, *In re Namenda Indirect Purchaser Antitrust Litig.*, 338 F.R.D. 527 (S.D.N.Y. 2021); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1 (E.D.N.Y. 2020); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, 338 F.R.D. 294 (D. Mass. 2021); *In re Opana ER Antitrust Litig.,* MDL No. 2580, 2021 WL 3627733 (N.D. Ill. June 4, 2021), *as modified* ECF No. 746 (N.D. Ill. Aug. 11, 2021); *In re Zetia (Ezetimibe) Antitrust Litig.*, MDL No. 2:18-md-2836, 2020 WL 5778756 (E.D. Va. Aug. 14, 2020), *rep. & rec. adopted* 2021 WL 3704727 (E.D. Aug. 20, 2021); *In re EpiPen (Epinephrine Injection, USP) Mkt'g, Sales Practices & Antitrust Litig.,* MDL No. 2785, 2020 WL 1180550 (D. Kan. Mar. 10, 2020); *In re Loestrin Fe Antitrust Litig.*, 410 F. Supp. 3d 352 (D.R.I. 2019); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017); *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017); *In re Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168 (D. Mass 2013), *aff'd*, 777 F.3d 9 (1st Cir. 2015).

[3] For Sections III.A.1-III.A.2, End-Payor Plaintiffs incorporate by reference the arguments made in support of their motion for certification of a litigation class. ECF No. 495.

6

### (a)   Numerosity

In this Circuit, "'numerosity is presumed at a level of 40 members.'" *Feliciano v. Corelogic Rental Prop. Sols.*, *LLC*, 332 F.R.D. 98, 106 (S.D.N.Y. 2019) (Hellerstein, J.) (quoting *Banyai v. Mazur*, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) and *Consol. Rail Corp. v. Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

The Settlement Class here well exceeds that—there are over one million prescriptions for Exforge that were filled during the Class Period (*see* ECF No. 402-2 (Conti Rpt. ¶ 49, Figure 1)), showing that there are thousands (if not tens or hundreds of thousands) of members of the proposed Settlement Class. *See In re Namenda*, 338 F.R.D. at 546; *see also Teva Pharms. USA, Inc. v. Abbott Labs.,* 252 F.R.D. 213, 232 (D. Del. 2008) (numerosity satisfied where "record indicates that millions of prescriptions were dispensed in the past several years, such that joinder is impracticable").

Accordingly, the numerosity requirement is satisfied.

### (b)   Commonality

"Commonality requires a plaintiff to demonstrate that the class members have suffered the same injury such that their claims depend upon a common contention that is capable of classwide resolution." *In re Namenda*, 338 F.R.D. at 546 (internal quotation marks and citations omitted). The commonality requirement is easily met when there is a single common question of law or fact. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011); *see also Beach v. JPMorgan Chase Bank, Nat'l Ass'n*, 17-CV-563 (JMF), 2019 WL 2428631, at *6 (S.D.N.Y. June 11, 2019); *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 105 (2d Cir. 2007) ("allegations of the existence of . . . conspiracy are susceptible to common proof"); *DeMarco v. Nat'l Collector's Mint, Inc.*, 229 F.R.D. 73, 80 (S.D.N.Y. 2005). Courts

routinely find that commonality exists in pay-for-delay cases. *See, e.g.*, *In re Restasis,* 335 F.R.D. at 11-12; *In re Namenda*, 338 F.R.D. at 546-47; *In re Solodyn*, 2017 WL 4621777, at *14-20; *In re Lidoderm*, 2017 WL 679367, at *18-25; *In re Nexium*, 297 F.R.D. at 174-83.

The common issues here include:

(a)      Whether Novartis made a large payment to Par for purposes of inducing Par to delay the launch of its competing generic version of Exforge;

(b)      Whether Novartis's payment was justified by traditional settlement consideration;

(c)      Whether Novartis unlawfully maintained its monopoly over Exforge through its reverse payment agreement with Par;

(d)      Whether Defendants' reverse payment agreement restrained competition for generic Exforge;

(e)      Whether Defendants' conduct harmed competition in the Exforge and generic Exforge market; and

(f)      Whether and to what extent Defendants' conduct caused antitrust injury to EPPs and the proposed classes, and the quantum of aggregate overcharge damages to EPPs and the proposed classes.

Accordingly, the commonality requirement is satisfied.

### (c)     Typicality

The typicality standard is satisfied when "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks and citations omitted); *In re Namenda*, 338 F.R.D. at 547; *see also Dial Corp. v. News Corp.*, 314 F.R.D. 108, 113 (S.D.N.Y. 2015), *amended,* 2016 WL 690895 (S.D.N.Y. Feb. 9, 2016) (typicality requirement "not demanding") (internal quotation marks omitted). Class members' claims need not be "identical," and "differences in the amount of damages, date, size or manner of purchase, the type of purchaser . . . and other such concerns

will not defeat class certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class." *In re Air Cargo Shipping Servs. Antitrust Litig.*, 06–MD–1175 (JG)(VVP), 2014 WL 7882100, at *31 (E.D.N.Y. Oct. 15, 2014) (citations omitted), *rpt. and rec. adopted*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015).

Here, End-Payor Plaintiffs' claims are typical because they arise from the same events or course of conduct that gives rise to the claims of the Settlement Class—namely, Novartis and Par's unlawful agreement not to compete in the market for brand and generic Exforge. *See generally*, *id.* ("Because the representative plaintiffs will seek to prove that they were harmed by the same overall course of conduct and in the same way as the remainder of the class, their claims are by all appearances typical of the class."); *see also In re Namenda*, 338 F.R.D. at 547 (typicality satisfied notwithstanding that the claims arose "from the antitrust laws of different states, [because] "'proof of anticompetitive conduct establishes a violation of each state's laws."'") (quoting *In re Solodyn*, 2017 WL 4621777, at *20); *In re Restasis*, 335 F.R.D. at 13 (finding a third-party payor's claims under state law to be typical of the claims of an end user class consisting of both third-party payors and consumers from other states); *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 687 (S.D. Fla. 2004) ("[T]he claims of the consumer and the third-party payer class representatives are not only typical of the claims of all class members, they are virtually identical in nature, notwithstanding variations in the amount of damages.). All members of the Settlement Class seek redress for the supracompetitive prices they were forced to pay for brand and generic Exforge.

Accordingly, the typicality requirement is satisfied.

#### (d)      Adequacy of Representation

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." *Cordes,* 502 F.3d at 99. The Court must consider "whether (1) the plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation." *Id*. at 9 (citation omitted).

A proposed class representative is adequate under Rule 23(a)(4) unless it has nonspeculative conflicts with absent class members that are "so palpable as to outweigh the substantial interest of every class member in proceeding with the litigation." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 514-15 (S.D.N.Y. 1996). To preclude certification, a "conflict must be more than merely speculative or hypothetical." *In re Visa Check/MasterMoney Antitrust Litig*, 280 F.3d 124, 145 (2d Cir. 2001) (citation omitted). Where defendants' actions form the basis of the antitrust claim, "named plaintiffs and their counsel have the same core objectives as would absent class members." *In re Carbon Black Antitrust Litig.*, No. Civ.A.03–10191–DPW, 2005 WL 102966, at *14 (D. Mass. Jan. 18, 2005) (citation omitted); *see also In re Opana ER*, 2021 WL 3627733, at *2 (adequacy satisfied for a class consisting of third-party payors and consumers even though named plaintiffs were third-party payors because "direct consumers and third-party payors suffered a concrete and financially calculable injury"); *In re Nexium*, 297 F.R.D. at 172 (finding named union plan sponsor plaintiffs to be adequate class representative of an end-payor class consisting of both individuals and entities).

Here, there are no conflicts between End-Payor Plaintiffs and other members of the Settlement Class concerning the subject matter of this litigation—all were injured by the same

alleged conduct. Thus, End-Payor Plaintiffs' interest in proving liability and damages is entirely aligned with that of the Settlement Class.

As for the adequacy of Class Counsel, the Court initially appointed Labaton Sucharow LLP as interim lead counsel for the End-Payor Class on August 3, 2018. ECF No. 59. On March 25, 2022, the Court granted End-Payor Plaintiffs' motion to substitute DiCello Levitt for Labaton Sucharow as interim lead counsel for the proposed Class of End-Payor Plaintiffs. ECF No. 503. The same attorneys have led this case throughout at both firms and have worked diligently, harmoniously, and efficiently with other counsel for the Class. DiCello Levitt has extensive experience in similar antitrust class actions and has served as Class Counsel in many pharmaceutical antitrust cases.[4] Class Counsel therefore satisfy Rule 23(a)(4), as well as the factors for appointing class counsel set forth in Rule 23(g).

Accordingly, the adequacy requirement is satisfied.

### 2.    All Requirements of Rule 23(b)(3) Are Satisfied

Once it is determined that the proposed class satisfies Rule 23(a), a class should be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Predominance exists where the questions that are capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015) (internal quotation marks and citation omitted). Predominance is a "test readily met" in cases alleging violations of the antitrust laws. *Amchem*, 521 U.S. at 625; *see also In re Namenda*, 338 F.R.D. at 551 ("Because it is primarily a

---

[4] *See* DiCello Levitt LLC firm resume, van der Meulen Decl. Ex. 2.

determination that focuses on the defendants' conduct—i.e., whether the conduct would actually violate the antitrust laws—common evidence generally predominates over individualized evidence with regard to this element.") (citation omitted).

        **(a)**        **Common Issues Predominate as to the Antitrust Violation**

End-Payor Plaintiffs allege that Novartis and Par entered a reverse payment agreement, that included a no-authorized generic ("no-AG") agreement, which induced Par to delay the launch of its generic version of Exforge until September 2014. *See* CAC ¶¶ 1, 7, 109. Proof of this alleged unlawful agreement will be based on Defendants' own documents and testimony and other economic evidence common to the Settlement Class. Courts have routinely observed that predominance can be established when the evidence to prove a claim "focuses on the defendants' conduct." *In re Namenda*, 338 F.R.D. at 551; *Dial Corp.*, 314 F.R.D. at 114. This remains true notwithstanding that EPPs brought claims under state antitrust and consumer protection laws. *See Langan v. Johnson & Johnson Consumer Cos., Inc.*, 897 F.3d 88, 97 (2d Cir. 2018) ("Variations in state laws do not necessarily prevent a class from satisfying the predominance requirement.").

Accordingly, common issues predominate as to the legal violation.

        **(b)**        **Common Issues Predominate as to Injury**

In this Circuit, antitrust injury "poses two distinct questions," one legal and one factual. *Cordes*, 502 F.3d at 106. The legal question is "whether any such injury is 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). The factual question is "whether injury-in-fact is susceptible to common proof in this case." *Id.* at 106. Plaintiffs need not demonstrate that they were actually injured, only "that class-

wide injury or 'impact' is capable of proof at trial through evidence that is common to the class rather than individual to its members." *Dial Corp.*, 314 F.R.D. at 114-15. If a "single formula can be employed to make a valid comparison between the but-for fee and the actual fee paid, then ... the injury-in-fact question is common to the class." *Cordes*, 502 F.3d at 107.

Here, "[t]here is only one type of injury alleged in the Complaint – overcharges paid" by purchasers as the result of Novartis's antitrust violation. *Id.* at 107. Thus, "the legal question raised by the antitrust injury element here is common to the class." *Id.* at 108.

As to the factual question, common evidence shows that Settlement Class members were injured by Novartis and Par's anticompetitive conduct by paying higher prices for their purchases of brand and generic Exforge. ECF No. 402-2 (Conti Rpt. ¶ 41). Novartis and Par's own internal documents demonstrate that generics quickly replace brands at substantially lower prices, with generic prices falling even further as the number of generic competitors increases. *See id.* at ¶¶ 52, 53, 71. Extensive academic and government publications similarly show that upon generic entry, the brand drug's share of the market erodes rapidly within the first six months and continues to erode over time. *See id.* at ¶¶ 47, 65. This demonstrates the robust procompetitive impact of unimpaired generic entry (and by implication how those effects are lost with impaired generic entry) and is strong common evidence of classwide impact here. Additionally, real-world observations demonstrate that actual generic Exforge prices were significantly lower than branded Exforge prices. *See id.* at ¶ 67, Figure 6.

End-Payor Plaintiffs established how this published economic literature and these real-world observations could be used to determine the but-for price of generic Exforge in a world without Novartis and Par's alleged reverse payment agreement. *See id.* at ¶¶ 100-105.

Numerous courts have accepted this method to show the existence and amount of overcharges suffered by plaintiffs in antitrust litigation, and have held this kind of evidence sufficient to establish antitrust injury on a class-wide basis. *See, e.g.*, *In re Restasis*, 335 F.R.D. at 18; *In re Ranbaxy,* 338 F.R.D. at 305 (describing this methodology as a "widely accepted method[] of proving antitrust injury and damages on a classwide basis").

Accordingly, common issues predominate as to antitrust injury.

### (c)      Common Issues Predominate as to Damages

The predominance requirement is further satisfied where, as here, aggregate damages to the Settlement Class can be reliably measured using class-wide evidence. *See, e.g.*, *In re NASDAQ*, 169 F.R.D. at 521 (approving damage model "to determine aggregate damages for the [c]lass as a whole").

Here, as discussed above at § III.A.2.b., End-Payor Plaintiffs relied on the same basic methodology to measure aggregate Class overcharge damages as has been approved in similar cases. *See* ECF No. 402-2 (Conti Rpt. ¶¶ 100-105); *see, e.g.*, *In re Restasis*, 335 F.R.D. at 18; *In re Ranbaxy,* 338 F.R.D. at 305. End Payor Plaintiffs' expert economist, Dr. Rena Conti, estimates aggregate brand-generic overcharge damages, which "occur when patients who would have otherwise consumed generic [Exforge] are instead forced to consume branded [Exforge] because generic entry was delayed[,]" and aggregate generic-generic overcharge damages, which "occur when the delayed generic entry causes generic prices to be higher in the actual world than the but-for world due to delayed competition." *In re Namenda*, 338 F.R.D. at 564. Dr. Conti ultimately uses common evidence and models but-for volumes and prices to conclude that aggregate overcharges suffered by the end-payors are as high as $120.4 million, depending on the but-for scenario. *See* ECF No. 402-2, 402-3 (Second Conti Errata Table 1).

14

Accordingly, common issues predominate as to damages, and the first prong of Rule 23(b)(3) is satisfied.

### (d)     A Class Action is Superior to Other Methods of Adjudication

Under Rule 23(b)(3), a court may assess the superiority of the class action mechanism by weighing class members' interest in pursuing separate actions, the extent of any independent litigation already commenced by class members, the desirability of concentrating the litigation in a single forum, and the difficulties likely to be encountered in the management of the class action. Fed. R. Civ. 23(b)(3). Numerous courts have held that a class action is a superior method of adjudicating claims in cases like this one. *See, e.g.*, *Amchem*, 521 U.S. at 615 (granting certification would "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results"); *see also In re Namenda*, 338 F.R.D. at 576 ("[W]hatever difficulties in managing this class action are dwarfed by the extraordinary difficulty (if not practical impossibility) of bringing the likely thousands of individual cases against Defendants if a class were not certified."). Moreover, since the request for class certification is only for purposes of settlement, "the Court need not inquire as to whether the case, if tried, would present management problems." *Nichols v. Noom, Inc.*, 20-CV-3677 (KHP), 2022 WL 2705354, at *6 (S.D.N.Y. July 12, 2022).

Accordingly, a class action is the superior method of adjudication, and the second prong of Rule 23(b)(3) is satisfied.

### B.     The Proposed Settlement Meets the Standard for Preliminary Approval

"Rule 23(e) requires court approval of a class action settlement." *In re Currency Conversion Fee Antitrust Litig.*, No. 01 MDL 1409, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006). "In determining whether to grant preliminary approval, the court starts with the proposition that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *Allen v. Dairy Farmers of Am., Inc.*, No. 5:09–cv–230, 2011 WL 1706778, at *2 (D. Vt. May 4, 2011) (internal quotation marks and citations omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy.") (internal quotation marks and citations omitted). Absent "fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Christine Asia Co. v. Yun Ma*, No. 1:15-md-02631 (CM) (SDA), 2019 WL 5257534, at *8 (S.D.N.Y. Oct. 16, 2019) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)).

"Preliminary approval is generally the first step in a two-step process before a class action settlement is approved." *In re Stock Exchs. Options Trading Antitrust Litig.*, No. 99 Civ.0962(RCC), 2005 WL 1635158, at *4 (S.D.N.Y. July 8, 2005). In considering preliminary approval, a court must assess whether it "will likely be able to approve the proposal" under the four factors enumerated by Rule 23(e)(2):

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal,

16

> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims,
>
> (iii) the terms of any proposed award of attorney's fees, including timing of payment, and
>
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The first two factors focus on "procedural fairness," while the latter two factors (and associated subfactors) focus on "substantive fairness." *Christine Asia*, 2019 WL 5257534, at *9–10.

The second step before a class action settlement is approved "is to give notice to class members and to hold a hearing to determine whether final approval of the settlement should be given." *Stock Exchs.*, 2005 WL 1635158, at *5.

### 1. The Settlement is Procedurally Fair

"To determine procedural fairness, courts examine the negotiating process leading to the settlement." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 618 (S.D.N.Y. 2012). Where a settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the settlement enjoys a "presumption of fairness, reasonableness, and adequacy." *McReynolds v. Richards–Cantave,* 588 F.3d 790, 803 (2d Cir. 2009) (citation omitted); *In re Austrian and German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000), *aff'd sub nom.*, *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001). That presumption also applies "when a settlement is reached with the assistance of a mediator." *Puddu v. 6D Glob. Techs.*, 15-cv-8061 (AJN), 2021 WL 1910656, at *4 (S.D.N.Y. May 12, 2021).

End-Payor Plaintiffs' interests are aligned with the Settlement Class: each suffered the same injury (overcharges on purchases of brand and generic Exforge) and have the same interest in maximizing recovery from Novartis. *See In re Global Crossing Secs. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) ("There is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery."); *see also Newberg on Class Actions* § 3.58 (5th ed. 2021) ("Adequacy does not require complete identity of claims or interests between the proposed representative and the class. All that is required . . . is sufficient similarity of interest such that there is no affirmative antagonism between the representative and the class." (citations omitted)).

Moreover, the Settlement Agreement was arrived at by arm's-length negotiations by highly experienced counsel after years of litigation and a mediation led by a highly experienced, respected, and neutral mediator, Eric D. Green of Resolutions, LLC. *See D'Amato*, 236 F.3d at 85 (recognizing that a mediator's involvement in "settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure").

Accordingly, the settlement is procedurally fair.

## 2.     The Settlement is Substantively Fair

"In terms of the overall fairness, adequacy, and reasonableness of the settlement, a full fairness analysis is unnecessary at this stage; preliminary approval is appropriate where a proposed settlement is merely within the range of possible approval." *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 34 (E.D.N.Y. 2006); *see also Karvaly v. eBay, Inc.*, 245 F.R.D. 71, 86 (E.D.N.Y. 2007) ("In the context of a motion for preliminary approval of a class action settlement, the standards are not so stringent as those applied when the parties seek final approval."). Nevertheless, courts consider four factors enumerated by Rule 23(e)(3) in assessing

whether a proposed settlement falls within the range of possible approval: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)."[5]

### (a)      Costs, Risks, and Delay of Trial and Appeal

Rule 23(e)(2)(C)(i) requires courts to consider "the costs, risks, and delay of trial and appeal." This inquiry overlaps with *Grinnell* factors one (the "complexity, expense, and likely duration of the litigation") and factors four, five, and six (the risks of establishing liability and damages and maintaining the class). *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019). In assessing these risks, the Court need not "decide the merits of the case," "resolve unsettled legal questions," or "foresee with absolute certainty the outcome of the case." *Fleisher v. Phx. Life Ins. Co.*, Nos. 11-cv-8405 (CM), 14-cv-8714 (CM), 2015 WL 10847814, at *8 (S.D.N.Y. Sep. 9, 2015) (cleaned up). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed

---

[5] Before Rule 23(e)(2)(C)'s four-factor framework was codified in December 2018, courts in this Circuit employed the nine-factor framework of *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974): "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." The nine *Grinnell* factors overlap with the four-factor framework, and are thus addressed where there is overlap. The Court need not consider the second *Grinnell* factor – the "reaction of the class" – at this time. *See, e.g., In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

settlement." *Id.* (quoting *Global Crossing*, 225 F.R.D. at 459). Courts recognize that "the complexity of Plaintiff's claims *ipso facto* creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) (citation omitted).

"Antitrust class actions are inherently complex." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 533 (E.D. Mich. 2003). Here, there are complex economic issues as well as "regulatory issues arising out of the Hatch-Waxman Act; patent law issues relevant to the Defendants' patent litigation underlying the[ir] Agreement; the intricacies of the pharmaceutical industry from a sales and marketing perspective; the scientific and production processes involved with investing and commercializing branded and generic pharmaceutical products; and the FDA regulations applicable to reviewing and approving pharmaceutical products and new manufacturing facilities and processes." *Id.* at 533-34. Resolving those claims would require "conflicting testimony by experts" and credibility assessments. *Fleisher*, 2015 WL 10847814, at *20.

Moreover, class certification likely would be a battle, with the losing party likely seeking interlocutory review pursuant to Rule 23(f). This would further extend the timeline of the litigation. *See, e.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 986 F. Supp. 2d 207, 222 n.13 (E.D.N.Y. 2013) ("In the *Wal-Mart* case, twenty months elapsed between the order certifying the class and the Second Circuit's divided opinion affirming that decision.").

Finally, trial here would be lengthy, and the losing party likely would appeal any adverse jury verdicts. Novartis, represented by one of the largest and most capable law firms in the world, has vigorously disputed liability, causation, and damages, and has filed multiple motions for summary judgment. While End-Payor Plaintiffs believe that their positions are strong, they would have to prevail as to every contested issue, whereas Novartis would have to prevail on just

a single defense to defeat End-Payor Plaintiffs' claims or severely devalue them. How a jury would resolve the contested issues is opaque at best. *See State of W. Va. V. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970)*, aff'd*, 440 F.2d 1079 (2d Cir. 1971) ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced."). Rather than risking an adverse verdict at trial, and years of uncertain appeals, End Payor-Plaintiffs and their counsel took advantage of a unique opportunity to negotiate a Settlement that provides immediate, certain, and meaningful relief to all Settlement Class members.

In sum, "[t]here can be no doubt that this class action would be enormously expensive to continue, extraordinarily complex to try, and ultimately uncertain of result." *In re NASDAQ Mkt.-Makers Antitrust Litig.,* 187 F.R.D. 465, 477 (S.D.N.Y. 1998). Accordingly, this factor weighs in favor of preliminary approval.

### (b)      Range of Reasonableness of the Settlement Fund

This Court must consider "the range of reasonableness of the settlement fund," both given the risks discussed in the previous subsection and "in light of the best possible recovery." *Grinnell*, 495 F.2d at 463.

The recovery of $30,000,000.00, when compared to the damages at issue in the litigation, is exceptional. End-Payor Plaintiffs' overcharge damages are calculated as the difference between the price they paid for brand and generic Exforge under the anticompetitive conditions that prevailed and competitive conditions in a but-for world absent Novartis's unlawful conduct. The damages in this case—the aggregate overcharges suffered by Class members—are estimated to be between $87.9 million and $120.4 million, depending on the but-for scenario. *See* ECF No. 402-3 (Second Conti Errata Table 1). The proposed settlement represents anywhere from approximately 34% to approximately 25% of the overcharges. This monetary relief is far greater

than needed to justify the settlement as reasonable. *See Grinnell Corp.*, 495 F.2d at 455 & n.2 (recognizing that "a satisfactory settlement" could amount to a small fraction – such as "a hundredth or even a thousandth part of a single percent of the potential recovery"). Courts routinely approve settlements with substantially lower-percentage awards. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, MDL No. 1775, 2009 WL 3077396, at *9 (E.D.N.Y. Sept. 25, 2009) (approving settlement value that was 10.5% of total damages); *In re Currency Conversion Fee Antitrust Litig.*, 2006 WL 3247396, at *6 (approving settlement cash award that was 10–15% of total damages). Furthermore, "settlement assures immediate payment of substantial amounts to Class Members, 'even if it means sacrificing speculative payment of a hypothetically larger amount years down the road.'" *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012) (citation omitted).

These results are excellent for the Settlement Class, especially considering the many risks, uncertainties, and delays that End-Payor Plaintiffs faced. And Class Counsel's view of the reasonableness of the settlement is given considerable weight because they are closest to the facts and risks associated with the litigation. *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12–Civ–8557 (CM), 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) ("[Lead Counsel's] opinion is entitled to great weight." (internal quotation marks and citation omitted)). Accordingly, this factor weighs in favor of preliminary approval.

### (c) The Proposed Plan of Allocation is Effective, Fair and Reasonable

Next, Rule 23(e)(2)(C)(ii) requires that the "proposed method of distributing relief" be "effective." A distribution plan satisfies the Rule if it is "reasonable" and has a "rational basis," especially if "recommended by experienced and competent class counsel." *In re Payment Card*,

330 F.R.D. at 40 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)).

The proposed plan of distribution meets this standard. As described in the proposed notice to Settlement Class members, and as set forth in the appended End-Payor Plaintiffs' [Proposed] Plan of Allocation ("Plan of Allocation") for the End-Payor Plaintiff Class and accompanying Declaration of Dr. Rena Conti in Support of End-Payor Plaintiffs' Plan of Allocation ("Conti Decl.") (*see* van der Meulen Decl. Exs. 3 and 4, respectively) the proceeds of the proposed Settlement in this case, net of Court-approved attorneys' fees, service awards for Named Plaintiffs, and costs of litigation ("Net Settlement Fund") will be allocated into two pools: one for consumer class members (the "Consumer Pool") and another for third-party payors (the "Third-Party Payor Pool"). *See* Plan of Allocation, ¶¶ 2-3. Dr. Conti calculated the average share of damages across all 12 scenarios for both consumers and third-party payors. She determined that the average share of total damages attributable to consumer class members was 27.80%; the average share of total damages attributable to third-party payor class members was 72.20%. *See* Conti Decl., ¶¶ 2(d), 3. As a result, Class Counsel concluded that the most equitable means of distributing the Net Settlement Fund would be to create two pools that would be funded by the share of overcharges attributable to consumers and third-party payors, respectively. Claimants will be paid their *pro rata* share of their respective pools. *See id.* at ¶¶ 15-19 (explaining distribution procedure).

To determine each eligible claimant's *pro rata* share of an Allocation Pool, the Settlement Administrator shall multiply the total value of that Allocation Pool by a fraction, for which (a) the numerator is the qualifying claim amount for that eligible claimant for that Allocation Pool, and (b) the denominator is the sum total of all qualifying claim amounts by all

eligible claimants for that Allocation Pool. *See id.* at ¶ 16. To the extent eligible claimants in a given Allocation Pool receive a maximum distribution, then any remaining funds will be allocated to eligible claimants in the other Allocation Pool. *See id.* at ¶ 17. Any remaining funds in either Allocation Pool will continue to be distributed until the distribution is no longer economically feasible, at which point Class Counsel will apply to the Court for a *cy pres* distribution to a charity or other nonprofit organization to be selected at a later date. *Id.* at ¶ 19.

This plan is effective, and accordingly, this factor weighs in favor of preliminary approval.

### (d)      The Terms of Any Proposed Award of Attorney's Fees

The Court also considers the terms of any proposed award of attorney's fees, including timing of payment. Fed. R. Civ. P. 23(e)(2)(C)(iii). Under the Settlement, Class Counsel will apply for an award of attorneys' fees not to exceed 33-1/3%, of the Settlement Fund, plus any accrued interest, plus reimbursement of litigation expenses. Class Counsel will not receive any funds until the Court has granted its fee request. Class Counsel's fee request therefore does not weigh against preliminary approval and will be fully briefed in End-Payor Plaintiffs' forthcoming petition for attorneys' fees, costs, and expenses.

### (e)      Any Agreement Required to Be Identified Under Rule 23(e)(3)

Rules 23(e)(2)(C)(iv) and 23(e)(3) require that any agreement "made in connection with the proposal" be identified. As part of the proposed Settlement, End-Payor Plaintiffs and Novartis entered into a separate agreement describing the circumstances whereby Novartis can elect to terminate the Settlement if a certain threshold of the Settlement Class were to opt out. *See* Settlement Agreement Ex. E. This opt-out threshold is confidential, but End-Payor Plaintiffs will, at the Court's request, file the agreement under seal.

24

### 3.        The Plan of Allocation Treats Settlement Class Members Equally

The final Rule 23(e)(2) factor requires the Court to assess whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). As set forth above at § III.B.2.c., the proposed plan of allocation (filed herewith) treats Class members equitably by distributing damages on a *pro rata* basis.

Accordingly, all factors weigh in favor of preliminary approval.

### 4.        The Proposed Settlement Satisfies Other Relevant Factors

### (a)        Stage of Proceedings

The Court must also consider the third *Grinnell* factor, "[t]he stage of the proceedings and the amount of discovery completed." *Grinnell*, 495 F.2d at 463. The Court assesses whether plaintiffs "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. MDL 1500, 02 Civ. 5575(SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).

Here, Plaintiffs completed extensive fact and expert discovery as well as briefing on class certification, *Daubert*, and summary judgment motions. Plaintiffs were also deeply immersed in trial preparation before engaging in a day-long mediation with an experienced mediator and reaching agreement with Novartis. Because the Settlement "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced," the Court may presume the settlement to be fair, adequate, and reasonable. *Newberg on Class Actions* § 11.41 (4th ed. 2002).

**(b)      Defendants' Ability to Withstand a Greater Judgment**

The Court also considers "the ability of the defendants to withstand a greater judgment."

*Grinnell Corp.*, 495 F.2d at 463. Here, even if Novartis could withstand a greater judgment, this

does not undermine the fairness of the Settlement. *See, e.g.*, *Fleisher*, 2015 WL 10847814, at *9

(noting that defendant's ability to pay more "does not, standing alone, indicate the settlement is

unreasonable or inadequate" (citation omitted)).

**(c)      Scope of the Release**

Courts may also look to the scope of the release. *See Payment Card*, 330 F.R.D. at 42

n.41. Here, the End-Payor Plaintiffs and Settlement Class would release Novartis "from all

manner of claims, rights, debts, obligations, demands, actions, suits, causes of action, damages

whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and

attorneys' fees, under federal or state laws, whether known or unknown, foreseen or unforeseen,

suspected or unsuspected, contingent or non-contingent, in law or equity, that arise out of or

relate, in whole or in part in any manner to the End-Payor Class Action that accrued prior to the

date of this Settlement Agreement." Settlement Agreement § 11. The release is narrowly tailored

to the claims related to this action and thus covers the claims actually at issue (or that could have

been asserted based on the alleged facts), making it appropriate. *See Wal-Mart Stores*, 396 F.3d

at 107 ("The law is well established in this Circuit and others that class action releases may

include claims not presented and even those which could not have been presented as long as the

released conduct arises out of the 'identical factual predicate' as the settled conduct.").[6]

---

[6] For example, the release excludes claims "(1) arising in the ordinary course of business
between Releasors and the Releasees arising under Article 2 of the Uniform Commercial Code
(pertaining to sales), the laws of negligence or product liability or implied warranty, breach of
contract, breach of express warranty, or personal injury; (2) arising out of or in any way relating
to any alleged price-fixing agreement between or among manufacturers of generic

### C.       The Proposed Form and Manner of Notice Are Appropriate

"Rule 23(e)(1)(B) requires the court to 'direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise' regardless of whether the class was certified under Rule 23(b)(1), (b)(2), or (b)(3)." *Manual for Complex Lit., Fourth*, at § 21.312. The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The notice must contain specific information in plain, easily understood language, including the nature of the action and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).

As explained in the Declaration of Steven Weisbrot of Angeion Group, LLC in Support of End-Payor Plaintiffs' Proposed Notice Plan, van der Meulen Decl. Ex. 5 ("Weisbrot Decl."), Angeion designed a proposed Notice Plan that will use direct mail and email notice as well as a consumer media campaign consisting of (a) Programmatic Display Advertising, (b) social media (*e.g.*, ads purchased on Facebook, Instagram, and LinkedIn), (c) paid search campaign, and (d) digital media (*e.g.*, banner ads). *See* Weisbrot Decl., ¶¶ 17-21, 25-42. Angeion will provide direct notice via first class U.S. mail, postage pre-paid, to approximately 28,500 mailing addresses and via email to approximately 9,500 email addresses on Angeion's proprietary list of drug stores, pharmacies, insurance companies, and health, welfare and pension funds that Angeion has obtained and manages. *See id.* at ¶ 17. Angeion will also target

---

pharmaceutical products, including but not limited to Novartis or Sandoz Inc., including claims alleged in *In re: Generic Pharmaceuticals Pricing Antitrust Litig.*, MDL No. 2724, Case No. 16-MD-2724 (E.D. Pa.); and/or (3) of any sort that do not relate specifically to brand or generic Exforge." Settlement Agreement § 12.

approximately 20,995,000 individuals via coordinated internet banner ads and social media ads that will appear on various websites and social media platforms. *See id*. at ¶¶ 25-42; *See* Fed. R. Civ. P. 23(e)(1) (calling for notice to be provided in a "reasonable manner to all class members who would be bound by the proposal"). The Notice Plan also provides for the implementation of a dedicated Settlement Website and a toll-free telephone line where Settlement Class members can learn more about their rights and options pursuant to the terms of the Settlement. *See id.* at ¶ 13.

Further, the proposed form of notice complies with Federal Rule of Civil Procedure 23(c). Consistent with Rule 23(c)(2)(B), the proposed notice describes "(i) the nature of the action; (ii) the definition of the [settlement] class certified; (iii) the class claims, issues, or defenses; (iv) [a directive] that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who [timely] requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members [of the settlement class] under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). *See* Settlement Agreement Ex. B.

Accordingly, the Court should approve the form and plan of the proposed notice.

### D.    Angeion Group, LLC is an Appropriate Settlement Administrator

Angeion, which has been designated as the Settlement Administrator, will oversee the administration of the Settlement, including disseminating notice to the Class, calculating each Class member's *pro rata* share of the Net Settlement Fund in conjunction with Dr. Conti, and distributing settlement proceeds. Angeion has regularly been approved by both federal and state courts throughout the United States and abroad to provide notice of class actions and claims processing services. Weisbrot Decl., ¶ 10.

### E.      Huntington National Bank is an Appropriate Escrow Agent

Huntington National Bank, which has been designated as the Escrow Agent for the purpose of administering the escrow account holding the Settlement Fund, is a highly respected bank with $183 billion in assets and provides consumers, corporations, and others with a broad range of financial services. *See* Declaration of Robyn Griffin, of Huntington National Bank, in Support of End-Payor Plaintiffs' Motion for Appointment of Escrow Agent, van der Meulen Decl. Ex. 6, ¶ 4. Huntington National Bank has served as escrow agent for more than 3,500 settlements representing over $70 billion (*id.* at ¶ 3), including other reverse payment litigation, and should also be appointed as Escrow Agent here. *See, e.g.*, *In re EpiPen, (Epinephrine Injection, USP) Mkt'g, Sales Practices & Antitrust Litig.*, No. 2:17-md-02785, ECF No. 2590-1 (D. Kan. Feb. 28, 2022) (preliminary approval motion seeking appointment of Huntington National Bank as escrow agent); *id.* at ECF No. 2594 (order granting preliminary approval); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 1:14-md-02503, ECF No. 1145 (D. Mass. Apr. 5, 2018) (appointing Huntington National Bank as escrow agent).

### F.      The Proposed Schedule is Fair

As set forth in the proposed order (Motion Ex. 1), End-Payor Plaintiffs propose the following schedule for completing the Settlement approval process:

| __ACTION__ | __DATE__ |
|---|---|
| Class administrator shall begin the process of providing notice to the End-Payor Class in accordance with the Plan of Notice | No later than 30 days from the date that the Court enters the Preliminary Approval Order |
| Members of the Class may request exclusion from the Class or object to the Settlement | No later than 60 days from the date that the Notice process begins |
| Pursuant to the Class Action Fairness Act of 2005 ("CAFA"), Novartis shall serve notices as required under CAFA and Novartis shall contemporaneously provide Class Counsel with copies of any such notices | Within 10 days from the date End-Payor Plaintiffs file the Settlement Documents with the Court |
| The Court will hold a final Fairness Hearing | On a date and time as set by the Court |
| Class members who wish to: (a) object with respect to the proposed Settlement; and/or (b) wish to appear in person at the Fairness Hearing, must postmark an Objection and/or a Notice of Intention to Appear, along with a Summary Statement outlining the position(s) | No later than 60 days from the date that the Notice is mailed to each member of the Class |
| All briefs and materials in support of the final approval of the settlement and the entry of Final Judgment proposed by the parties to the Settlement Agreement shall be filed | No later than 30 days before the date of the Fairness Hearing |
| All briefs and materials in support of the application for an award of attorneys' fees and reimbursement of expenses, and service awards for the End-Payor Plaintiffs, shall be filed with the Court | No later than 21 days prior to the expiration of the opt-out and objection deadline for Class members |

This schedule is fair to Settlement Class members since it provides ample time for consideration of the Settlement and Class Counsel's request for fees, expenses, and incentive awards before the deadline for submitting objections. In addition, the schedule allows the full statutory period for Novartis to serve their Class Action Fairness Act notices pursuant to 28 U.S.C. § 1715, and for regulators to review the proposed settlement and, if they choose, advise the Court of their view.

## IV.   CONCLUSION

For the reasons set forth above, End-Payor Plaintiffs respectfully request that the Court enter an order, substantially in the form of Motion Ex. 1, granting End-Payor Plaintiffs' Unopposed Motion for: (a) Preliminary Approval of Proposed Settlement, (b) Certification of Settlement Class, (c) Appointment of DiCello Levitt as Class Counsel and Named Plaintiffs as Class Representatives, (d) Preliminary Approval of Plan of Allocation, (e) Approval of Form and Manner of Notice to Class, (f) Appointment of Angeion Group, LLC as Settlement Administrator and Huntington National Bank as Escrow Agent, and (g) Proposed Schedule for Fairness Hearing.

Dated: February 22, 2023                                   Respectfully submitted,

By: */s/ Robin A. van der Meulen*
Robin A. van der Meulen
Gregory S. Asciolla
Matthew J. Perez
Veronica Bosco
**DICELLO LEVITT LLC**
485 Lexington Avenue
Suite 1001
New York, NY 10017
Tel: (646) 933-1000
rvandermeulen@dicellolevitt.com
gasciolla@dicellolevitt.com
mperez@dicellolevitt.com
vbosco@dicellolevitt.com

*Interim Lead Counsel for the End-Payor
Class and Counsel for UFCW Local 1500
Welfare Fund*

Robert G. Eisler
Kelly L. Tucker
Chad B. Holtzman
Nathan Reeder
**GRANT & EISENHOFER P.A.**
485 Lexington Avenue

31

New York, NY 10017
Tel: (646) 722-8500
reisler@gelaw.com
ktucker@gelaw.com
choltzman@gelaw.com
nreeder@gelaw.com

*Attorneys for Plaintiff Law Enforcement
Health Benefits Inc.*