**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re Novartis and Par Antitrust Litigation** | **1:18-cv-04361-AKH** |
| **This Document Relates to:** **All Direct Purchaser Class Actions** | |

**MEMORANDUM OF LAW IN SUPPORT OF DIRECT PURCHASER CLASS
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND PLAN OF
<u>ALLOCATION</u>**

## TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................................3

III.  ARGUMENT .....................................................................................................5

   A.   Standards for Final Approval of Class Action Settlements .................................5

      1.   The Law Favors and Encourages Settlements .............................................5

      2.   The Settlement Must Be Procedurally and Substantively Fair, Adequate, and
           Reasonable ...................................................................................................6

   B.   The Proposed Settlement Is Procedurally Fair .................................................8

      1.   Plaintiffs and Class Counsel Have Adequately Represented the Class...........8

      2.   The Proposed Settlement Was Negotiated at Arm's Length...........................9

   C.   The Proposed Settlement Is Substantively Fair .............................................10

      1.   The Proposed Settlement Is Adequate in Light of the Costs, Risk, and Delay of Trial
           and Appeal .................................................................................................10

      2.   The Proposed Method for Distributing Relief Is Effective ...........................14

      3.   Attorneys' Fees...........................................................................................14

      4.   The Parties Have No Other Agreements in Connection with the Settlement Other Than
           the Opt-Out Threshold ................................................................................15

      5.   Class Members Are Treated Equitably..........................................................16

   D.   The Proposed Settlement Satisfies the Remaining Grinnell Factors..................16

      1.   The Second Grinnell Factor – The Reaction of the Class ..............................16

      2.   The Third Grinnell Factor – The Stage of the Proceedings and the Amount of
           Discovery Completed....................................................................................17

      3.   The Seventh Grinnell Factor – Novartis's Ability to Withstand a Greater Judgment...17

      4.   The Eighth and Ninth Grinnell Factors – The Proposed Settlement Amount Is
           Reasonable in View of the Best Possible Recovery and the Risks of Litigation..........18

   E.   The Plan of Allocation Is Fair and Adequate .................................................19

IV.   CONCLUSION .................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

Page(s)

*Charron v. Pinnacle Grp. N.Y. LLC*,
  874 F. Supp. 2d 179 (S.D.N.Y. 2012) ................................................................. 13

*Christine Asia Co. v. Jack Yun Ma*,
  2019 U.S. Dist. LEXIS 179836 (S.D.N.Y. Oct. 16, 2019) ....................................... 5, 8, 9, 18

*City of Providence v. Aeropostale, Inc.*,
  2014 U.S. Dist. LEXIS 64517 (S.D.N.Y. May 9, 2014) .................................... 16, 17

*D'Amato v. Deutsche Bank,*
  236 F.3d 78 (2d Cir. 2001)………………………………………….......................................7

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ................................................................ 2, 7

*Fleisher v. Phoenix Life Ins. Co.*,
  2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015) ..................................... 13

*FTC v. Actavis, Inc.*,
  570 U.S. 136 (2013) ............................................................................. 12

*Goldberger v. Integrated Res.*,
  Inc., 209 F.3d 43 (2d Cir. 2000) ...................................................... 14

*Guevoura Fund Ltd. v. Sillerman*,
  2019 U.S. Dist. LEXIS 218116 (S.D.N.Y. Dec. 18, 2019) ............................... 8, 18

*Guippone v. BH S&B Holdings LLC*,
  2016 U.S. Dist. LEXIS 134899 (S.D.N.Y. Sept. 23, 2016) .................................. 13

*Hart v. RCI Hosp. Holdings*,
  2015 U.S. Dist. LEXIS 126934 (S.D.N.Y. Sept. 22, 2015) ............................ 19, 20

*Hesse v. Godiva Chocolatier*,
  2022 U.S. Dist. LEXIS 72641 (S.D.N.Y. Apr. 20, 2022) ............................ 7, 8, 10

*Hicks v. Morgan Stanley*,
  2005 U.S. Dist. LEXIS 24890 (S.D.N.Y. Oct. 24, 2005) ................................ 12, 13

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
  298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................ 5, 6, 12

*In re Agent Orange Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ........................................................ 18

*In re AOL Time Warner, Inc.*,
  2006 U.S. Dist. LEXIS 17588 (S.D.N.Y. Apr. 6, 2006) ........................................ 19

*In re Bear Stearns Cos.*,
  909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................ 17

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*,
  2019 U.S. Dist. LEXIS 75205 (N.D. Cal. May 3, 2019) ........................................ 8

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
  2007 U.S. Dist. LEXIS 57918 (S.D.N.Y. July 27, 2007) ........................................ 6

*In re Glumetza Antitrust Litig.*,
  2022 U.S. Dist. LEXIS 20157 (N.D. Cal. Feb. 3, 2022) ........................................ 20

*In re GSE Bonds Antitrust Litig.*,
  2020 U.S. Dist. LEXIS 104842 (S.D.N.Y. June 16, 2020) .................................... 10

*In re Imax Securities Litigation*,
  283 F.R.D. 178 (S.D.N.Y 2012) .................................................................. 17, 18

*In re Namenda Direct Purchaser Antitrust Litig.*,
  462 F. Supp. 3d 307 (S.D.N.Y. 2020) ................................................................ 20

*In re Nexium (Esomeprazole) Antitrust Litig.*,
  842 F.3d 34 (1st Cir. 2016) ............................................................................. 11

*In re PaineWebber Ltd. P'ships Litig.*,
  171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................. 9, 16, 18

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d Cir. 1998) .............................................................................. 5

*In re Pfizer Sec. Litig.*,
  2014 U.S. Dist. LEXIS 92951 (S.D.N.Y. July 8, 2014) .................................. 10, 11

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  2020 U.S. Dist. LEXIS 198674 (E.D.N.Y. Oct. 7, 2020) .................................... 20

*In re Sadia S.A. Sec. Litig.*,
  2011 U.S. Dist. LEXIS 149107 (S.D.N.Y. Dec. 28, 2011) .................................... 17

*In re Veeco Instruments Inc. Sec. Litig.*,
  2007 U.S. Dist. LEXIS 85629 (S.D.N.Y. Nov. 7, 2007) ...................................... 16

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) .................................................... 10, 19, 20

*Meredith Corp. v. SESAC, LLC*,
  87 F. Supp. 3d 650 (S.D.N.Y. 2015) ................................................................ 10

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC,*
   2019 U.S. Dist. LEXIS 39807 (S.D.N.Y. Mar. 8, 2019) ....................................................... 9

*Newman v. Stein,*
   464 F.2d 689 (2d Cir. 1972) ............................................................................................... 18

*Nichols v. Noom, Inc.,*
   2022 U.S. Dist. LEXIS 123146 (S.D.N.Y. July 12, 2022) ................................................... 18

*Park v. Thomson Corp.,*
   2008 U.S. Dist. LEXIS 84551 (S.D.N.Y. Oct. 22, 2008) ..................................................... 10

*Reyes v. City of Rye,*
   2017 U.S. Dist. LEXIS 103096 (S.D.N.Y. June 30, 2017) .................................................... 6

*Snyder v. Ocwen Loan Servicing, LLC,*
   2019 U.S. Dist. LEXIS 80926 (N.D. Ill. May 14, 2019) ....................................................... 8

*Strougo v. Bassini,*
   258 F. Supp. 2d 254 (S.D.N.Y. 2003) ................................................................................. 12

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.,*
   2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ....................................................... 16

*Thompson v. Metro. Life Ins. Co.,*
   216 F.R.D. 55 (S.D.N.Y. 2003) ............................................................................................. 7

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
   396 F.3d 96 (2d Cir. 2005) ................................................................................... 5, 7, 9, 18

**Statutes**

Federal Rule of Civil Procedure 23(e) .......................................................................... *passim*

Federal Rule of Civil Procedure 23(f) ..................................................................................... 13

## I.       INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Direct Purchaser Class Plaintiffs Drogueria Betances, LLC ("Betances"), Rochester Drug Co-Operative, Inc. ("RDC"), FWK Holdings, LLC ("FWK") and KPH Healthcare Services, Inc., a/k/a Kinney Drugs, Inc. ("KPH") (individually "Named Plaintiffs" and collectively "Direct Purchaser Class Plaintiffs" or "Plaintiffs") respectfully submit this memorandum of law in support of their motion for final approval of the Settlement with Novartis Pharmaceuticals Corporation and Novartis AG (collectively, "Novartis")[1] reached in the above-captioned class action, and approval of the Plan of Allocation (the "Plan"). The terms of the proposed Settlement are set forth in the Settlement dated December 23, 2022, which was previously filed with the Court at ECF No. 587-1 (the "Settlement"). The Court granted preliminary approval of the Settlement on January 6, 2023. ECF No. 595.

The proposed Settlement provides for the payment of $126,850,000 by Novartis. The recovery obtained on behalf of the Class[2] is the product of extraordinary effort by Named Plaintiffs and their counsel over the last five years. Pursuant to the Preliminary Approval Order, notice of the Settlement was sent to all Class members by First Class mail on January 23, 2023. *See* Ex. 1,

---

[1] Novartis together with Par Pharmaceutical, Inc. ("Par") are collectively referred to as "Defendants."

[2] The "Direct Purchaser Class" or "Class" is comprised of: All persons or entities in the United States, including its territories, possessions, and the Commonwealth of Puerto Rico, who purchased Exforge directly from Novartis, or who purchased a generic version of Exforge directly from Par, at any time during the Class Period from September 21, 2012, until March 30, 2015 ("Exforge Direct Purchasers"). Excluded from the Class are Defendants and their officers, directors, management and employees, predecessors, subsidiaries and affiliates, and all federal governmental entities.

Also excluded from the Class for purposes of this Settlement Agreement are: the following entities: CVS Pharmacy, Inc. (which includes Omnicare), Rite Aid Corporation, Rite Aid Hdqtrs. Corp., Walgreen Co., The Kroger Co. (which includes Peytons), and H-E-B L.P. ("Retailer Plaintiffs").

Declaration of Tina Chiango, RG/2 Claims Administration LLC, Regarding Notice of the Proposed Settlement to the Direct Purchaser Class, filed herewith ("Administrator Decl."), at ¶ 3. No objections have been lodged to the Settlement, the request for service awards of $100,000 for each Named Plaintiff or to the fees and expenses requested by Class Counsel. *Id*. ¶ 6. Six Class members have submitted letters affirmatively supporting the Settlement, the requested service awards, and the fees and expenses requested. *See* Exs. 3-8 hereto.

The proposed Settlement represents an excellent result for the Class under any measure, recovering approximately 85% of Plaintiffs' conservative damages calculation,[3] and satisfies Rule 23(e)(2) and the applicable factors under *Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974), the Second Circuit's seminal decision on settlement approval standards. The proposed Settlement is particularly beneficial to the Class when considered in light of the risks posed by the upcoming trial of this case and the delay associated with likely post-trial appeals, which could ultimately lead to no recovery, or a far smaller recovery years into the future.

Class Counsel, on behalf of the Class, therefore respectfully request that the Court enter the accompanying proposed Order Granting Final Judgment and Order of Dismissal Approving Direct Purchaser Class Settlement and Dismissing Direct Purchaser Class Claims which, *inter alia*: (a) grants final approval to the Settlement pursuant to Federal Rule of Civil Procedure 23(e); (b) approves the Plan of Allocation (ECF No. 587-2), which provides a fair and reasonable method of determining each Class member's allocated share of the Settlement based upon each Class member's actual purchases of brand and/or generic Exforge; (c) dismisses all claims against Novartis; and (d) grants service awards of $100,000 each for the four Named Plaintiffs, reimburses

---

[3] Other damages calculations and figures depended on Plaintiffs being able to prove, *inter alia*, fraudulent concealment of the challenged agreement, which was the subject of one of Defendants' summary judgment motions and about which the Court expressed skepticism as to Plaintiffs' prospects for success. Jan. 6, 2023 Hearing Tr. 3:25 - 4:5.

Class Counsel for $2,473,507.26 in expenses, and awards attorneys' fees in the amount of $41,325,497.58, *i.e.*, 33 ⅓% of the settlement amount (net of expenses and service awards, plus an equal percentage of any interest accrued since the settlement amount was escrowed). The proposed order submitted herewith is based on the proposed order attached as Exhibit C to the Settlement Agreement, revised to reflect the amount of fees and costs being sought. *See* Ex. 1 to Notice of Mot.; ECF No. 587-1 at PDF page no. 48.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Since the first class action complaint was filed in May 2018, Class Counsel aggressively litigated this case until it was ready for trial, reaching the mediated Settlement following fulsome summary judgment, class certification and *Daubert* briefing. The full procedural history of this case is detailed in the Declaration of Bruce E. Gerstein in Support of Class Counsel's Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards for the Named Plaintiffs (ECF No. 606), which is incorporated herein ("Gerstein Decl.").

To summarize, Class Counsel expended more than 43,000 hours in prosecuting this case from investigation and filing the first complaint in Spring of 2018 through the end of January 2023. Gerstein Decl. ¶ 61. Plaintiffs: (a) survived a motion to dismiss (*id.* ¶¶ 7-10); (b) reviewed and analyzed millions of pages of documents and lines of transaction data from Defendants and third parties (*id.* ¶¶ 12-17); (c) took or defended 38 fact and expert depositions (*id.* ¶ 18); (d) consulted with and retained 10 experts in wide-ranging disciplines (*id.* ¶ 27); (e) engaged in substantial discovery motion practice, including on the issue of privilege (*id.* ¶¶ 19-26); (f) fully briefed class certification (*id.* ¶ 32); (g) opposed Defendants' comprehensive summary judgment and *Daubert* motions (*id.* ¶¶ 33-38); (h) substantially prepared for trial that was scheduled for January 2023 (*id.* ¶ 40); and (i) prepared for and participated in successful mediation (*id.* ¶¶ 42-43).

This case was extremely complex, requiring mastery of antitrust, patent, and regulatory law. Plaintiffs, through Class Counsel and experts, had to: show Par was likely to defeat Novartis in litigation had Par launched generic Exforge without a license; master the biopharmaceutical aspects of hypertension; master several challenging areas of FDA drug regulation; master pharmaceutical manufacturing procedures and timing; understand and analyze Novartis's and Par's internal forecasting and manufacturing planning documents; analyze and opine concerning the relevant antitrust market and whether Novartis possessed market power; develop a defensible economic model to determine the earlier entry date in a hypothetical license agreement between Novartis and Par absent a No-AG term; and develop economic modeling of class-wide impact and calculations of damages from the challenged conduct.

On December 23, 2022, Class Counsel filed a fully executed version of the Settlement Agreement with the Court. ECF No. 587-1. On December 28, 2022, Class Counsel filed a motion seeking preliminary approval and class certification (ECF No. 588) requesting that the Court certify the Direct Purchaser Class, preliminarily approve the Settlement, approve the form and manner of notice to the Class, and set a schedule leading up to and including a Fairness Hearing. On January 6, 2023, the Court granted Plaintiffs' motion. ECF No. 595. Concurrently, the Court appointed an escrow agent and claims administrator, approved the form and manner of notice to the Class, and set a schedule. *Id*. Thereafter, Novartis deposited $126,850,000 into an escrow account that is earning interest for the benefit of the Class.

Notice of Settlement was sent to all Class members via direct mailing on January 23, 2023. *See* Administrator Decl. ¶ 3. The notice detailed, *inter alia*: (a) the terms of the Settlement and proposed Plan of Allocation; (b) that Class Counsel intended to seek attorneys' fees of up to 33 ⅓% of the Settlement fund (net of expenses and service awards), reimbursement of expenses, and service awards of $100,000 for each Named Plaintiff and would file their motion for attorneys'

fees, expenses and service awards by February 23, 2023; (c) the procedures and deadline of March 9, 2023 for opting out of the Class or objecting to the Settlement and/or Class Counsel's motion for attorneys' fees, expenses and service awards; and (d) the location, date and time of the Court's final fairness hearing on May 16, 2023. The notice also explained that copies of the Settlement Agreement, the motion for attorneys' fees, expenses and service awards (when filed), and other important documents would be posted publicly at www.garwingerstein.com. *See* Ex. 1, Administrator Decl. & Ex. A thereto (copy of mailed notice).

Class Counsel timely filed their motion for fees, expenses and service awards on February 23, 2023. ECF No. 603. Class Counsel sought 33 ⅓% of the Settlement fund (net of expenses and service awards plus an equal percentage of any interest accrued since the settlement amount was escrowed), reimbursement of expenses of $2,473,507.26 and service awards of $100,000 for each Named Plaintiff. ECF No. 604. Pursuant to the Preliminary Approval Order, Class members had until March 9, 2023 to object to the Settlement and/or Class Counsel's fee request. ECF No. 595 at ¶ 19.  No objections of any kind have been filed. Administrator Decl. ¶ 6.

## III.    ARGUMENT

### A.    Standards for Final Approval of Class Action Settlements

#### 1.    The Law Favors and Encourages Settlements

When exercising discretion to approve a settlement, courts are "mindful of the 'strong judicial policy in favor of settlements.'" *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)). *See also Christine Asia Co. v. Jack Yun Ma*, 2019 U.S. Dist. LEXIS 179836, at *35 (S.D.N.Y. Oct. 16, 2019) ("[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation.") (citation omitted); *In re Advanced Battery*

*Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 174 (S.D.N.Y. 2014) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding the time, cost, and rigor of prolonged litigation.").

### 2. The Settlement Must Be Procedurally and Substantively Fair, Adequate, and Reasonable

"Fairness [of a settlement] is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Reyes v. City of Rye*, 2017 U.S. Dist. LEXIS 103096, at *12 (S.D.N.Y. June 30, 2017) (citation omitted). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *12 (S.D.N.Y. July 27, 2007). Rule 23(e)(2), as recently amended, provides:

> (2) *Approval of the Proposal*. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (A)   the class representatives and class counsel have adequately represented the class;
>
> (B)   the proposal was negotiated at arm's length;
>
> (C)   the relief provided for the class is adequate, taking into account:
>
> (i)   the costs, risks, and delay of trial and appeal;
>
> (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>
> (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
>
> (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)   the proposal treats class members equitably relative to each other.

Rule 23(e)(2).

In addition, courts in the Second Circuit utilize the following factors (known as the "*Grinnell* factors") when determining whether to approve a class action settlement: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Wal-Mart*, 396 F.3d at 117 (quoting *Grinnell*, 495 F.2d at 463). The factors set forth in Rule 23(e)(2) are applied in tandem with the *Grinnell* factors to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *See* Advisory Committee Notes to 2018 Amendments.

Not every *Grinnell* factor needs to be satisfied to find that a settlement is substantially fair, reasonable and adequate; "rather, the court should consider the totality of these factors in light of the particular circumstances." *Thompson v. Metro. Life Ins. Co.*, 216 F.R.D. 55, 61 (S.D.N.Y. 2003) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001)).

As acknowledged by the Preliminary Approval Order and the transcript of the January 6, 2023 preliminary fairness hearing, Plaintiffs have met all of the requirements of Rule 23(e)(2). ECF No. 595 ¶¶ 11-12; Jan. 6, 2023 Hearing Tr. 20:7-20. Courts analyzing the recently amended Rule 23(e)(2) factors have noted that a plaintiff's satisfaction of these factors is virtually assured where, as here, little has changed between preliminary approval and final approval. *See Hesse v. Godiva Chocolatier*, 2022 U.S. Dist. LEXIS 72641, at *16-17 (S.D.N.Y. Apr. 20, 2022) ("With respect to the procedural fairness elements, the Court reiterates its preliminary findings that the

Settlement terms comply with those requirements."); *id.* at *16-17 (same with respect to substantive fairness); *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*, 2019 U.S. Dist. LEXIS 75205, at *29 (N.D. Cal. May 3, 2019) (finding that the "conclusions [made in granting preliminary approval] stand and counsel equally in favor of final approval now"); *Snyder v. Ocwen Loan Servicing, LLC*, 2019 U.S. Dist. LEXIS 80926, at *14 (N.D. Ill. May 14, 2019) (noting in analyzing Rule 23(e)(2) that "[s]ignificant portions of the Court's analysis remain materially unchanged from the previous order [granting preliminary approval]").

Plaintiffs respectfully submit that the proposed Settlement satisfies both Rule 23(e)(2) and the *Grinnell* factors and warrants the Court's approval as fair, reasonable, and adequate.

### B.    The Proposed Settlement Is Procedurally Fair

Rules 23(e)(2)(A)-(B) "constitute the procedural analysis of the fairness inquiry." *Christine Asia*, 2019 U.S. Dist. LEXIS 179836, at *38 (quotations omitted). "A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arm's-length negotiations, and great weight is accorded to counsel's recommendation." *Guevoura Fund Ltd. v. Sillerman*, 2019 U.S. Dist. LEXIS 218116, at *16 (S.D.N.Y. Dec. 18, 2019) (citations omitted). The presumption of fairness and adequacy applies here. The analysis of the first, fourth and fifth *Grinnel* factors overlaps with the analysis of Rules 23(e)(2)(A)-(B).

#### 1.    Plaintiffs and Class Counsel Have Adequately Represented the Class

Plaintiffs and Class Counsel have readily satisfied the requirements of Rule 23(e)(2)(A) having diligently prosecuted this litigation over the course of five years by, among other things, opposing Defendants' motion to dismiss; conducting extensive fact discovery, including the request for, negotiation over, review and analysis of approximately 2.5 million pages of documents produced by Defendants, third parties and Plaintiffs; conducting or defending 23 fact depositions; responding to discovery requests propounded by Defendants; litigating multiple discovery

motions; fully briefing class certification, opposing two motions for summary judgment and multiple *Daubert* motions; completing expert discovery, including report preparation and depositions of the 15 designated experts; drafting motions *in limine* and other pretrial submissions; preparing for trial; and negotiating this proposed Settlement with the assistance of Eric D. Green, one of the nation's most respected mediators. Gerstein Decl. ¶¶ 10-43. Plaintiffs and Class Counsel stood ready to, and at all times did, advocate for the best interests of the Class, and were actively preparing for trial when the proposed Settlement was reached. Thus, Rule 23(e)(2)(A) is satisfied.

### 2. The Proposed Settlement Was Negotiated at Arm's Length

Plaintiffs also satisfy Rule 23(e)(2)(B) as the proposed Settlement is the result of an arm's-length negotiation. The parties negotiated the proposed Settlement under the supervision of an experienced mediator. *See* Gerstein Decl. ¶¶ 42-43. The mediation process, overseen by one of the country's foremost mediators, provides compelling evidence that the proposed Settlement is not the product of collusion between the parties. *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp.*, *PLC*, 2019 U.S. Dist. LEXIS 39807, at *6, *13-14 (S.D.N.Y. Mar. 8, 2019) (the parties' participation in mediation is evidence of arm's-length negotiations).

In the Second Circuit, a strong presumption of fairness attaches to a class action settlement reached through arm's-length negotiations among able and experienced counsel. *See Wal-Mart*, 396 F.3d at 116; *Christine Asia*, 2019 U.S. Dist. LEXIS 179836, at *38-39; *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("So long as the integrity of the arm's length negotiation process is preserved . . . a strong initial presumption of fairness attaches to the proposed settlement."), *aff'd*, 117 F.3d 721 (2d Cir. 1997). A presumption of fairness is further supported when experienced counsel endorse a proposed settlement, as "great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the

underlying litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 366 (S.D.N.Y. 2002) (citation omitted).

Accordingly, the proposed Settlement is entitled to the presumption of procedural fairness under Second Circuit law; Rule 23(e)(2)(B) is satisfied.

### C.   The Proposed Settlement Is Substantively Fair

#### 1.   The Proposed Settlement Is Adequate in Light of the Costs, Risk, and Delay of Trial and Appeal

Rules 23(e)(2)(C)-(D) concern the substantive adequacy of the proposed Settlement. *Hesse*, 2022 U.S. Dist. LEXIS 72641, at *17-18. Rule 23(e)(2)(C)(i) advises district courts to consider "the costs, risks and delay of trial and appeal," which considerations overlap with the first, fourth, fifth and sixth *Grinnell* factors addressing the risks of establishing liability and damages, and maintaining class certification.

The risks in antitrust class actions are well known. Courts in this district recognize that antitrust class actions "are notoriously complex, protracted, and bitterly fought." *In re GSE Bonds Antitrust Litig.*, 2020 U.S. Dist. LEXIS 104842, at *19 (S.D.N.Y. June 16, 2020) (quoting *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 669 (S.D.N.Y. 2015)); *Park v. Thomson Corp.*, 2008 U.S. Dist. LEXIS 84551, at *15 (S.D.N.Y. Oct. 22, 2008) ("antitrust cases are typically complex"). Although Plaintiffs and Class Counsel firmly believe that the claims asserted in the litigation are meritorious, and that they would prevail at trial, further litigation against Novartis posed risks that made any recovery uncertain. *See* Gerstein Decl. ¶¶ 33-35, 50-56.

To underscore this point, an antitrust plaintiff must prove every element of the rule of reason, causation and damages while a defendant need prevail only as to one to make a plaintiff's case much more difficult, if not impossible, to prove. *See In re Pfizer Sec. Litig.*, 2014 U.S. Dist. LEXIS 92951, at *18-19 (S.D.N.Y. July 8, 2014) (granting summary judgment in favor of

defendants after excluding plaintiffs' damage and causation expert). At the time of settlement, two motions for summary judgment and multiple motions to exclude certain of Plaintiffs' experts were pending. Gerstein Decl. ¶¶ 33-39. These motions could have reduced potential damages or resulted in dismissal. *Id*. Even getting in front of a jury is no guarantee of success. For example, in two reverse payment cases that went to trial the plaintiffs were able to convince the jury that defendants engaged in anticompetitive conduct but still lost because they could not convince a jury that the challenged conduct caused the alleged harm. *Id*. at ¶ 54 (citing *In re Opana ER Antitrust Litig.*, No. 14-cv-10150 (N.D. Ill. Aug. 22, 2022), ECF No. 1067 and *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 39 (1st Cir. 2016)).

While Plaintiffs believe their claims have been borne out by the evidence, Defendants' summary judgment and *Daubert* motions introduced real risk. *See* Gerstein Decl. ¶¶ 33-35. Defendants' first summary judgment motion argued that the statute of limitations either mandated dismissal of Plaintiffs' claims, or significantly diminished their value. *Id*. ¶ 34. Specifically, they argued that the "continuing violation" doctrine did not apply because the execution of the Novartis-Par License Agreement (the "NPLA") in 2012 was the allegedly unlawful conduct, and Plaintiffs did not sue until 2018. *Id*. While Defendants' motion was pending, the issue of the application of the continuing violation doctrine to purchasers was presented to the Court of Appeals for the Second Circuit in *Litovich v. Bank of America*, No. 21-2905 (2d Cir.). The outcome of the appeal in *Litovich*, which is pending a decision, introduced significant risk for Plaintiffs. *Id*. Defendants also argued that even if the continuing violation doctrine applied, Plaintiffs could not satisfy the elements of fraudulent concealment to toll the running of the statute of limitations, and thus Plaintiffs' claims were time barred as to damages incurred before May 2014. *Id*. The Court

expressed skepticism about Plaintiffs' fraudulent concealment allegations. *See* Jan. 6, 2023 Hearing Tr. 3:19-4:5.

Defendants' second motion for summary judgment argued that Plaintiffs could not prove causation or damages. Defendants argued that Plaintiffs' theory — that Defendants would have entered into a lawful agreement without a reverse payment and with earlier Par entry — was speculative and unsupported. Gerstein Decl. ¶ 34. Defendants also attacked Plaintiffs' various causation theories with multiple *Daubert* motions, and the exclusion of any of Plaintiffs' causation experts would have damaged Plaintiffs' case. Gerstein Decl. ¶ 35.

Even if Plaintiffs emerged from summary judgment and *Dauberts* unscathed, Novartis still could have persuaded the jury that the NPLA did not contain a "No-AG" clause but rather a mere "notice provision" that provided Par sufficient lead time to manufacture generic Exforge, as Defendants and their experts had argued. Novartis also could have persuaded the jury that even if the NPLA did contain a reverse payment, it was not "large" or "unjustified" under *FTC v. Actavis, Inc.*, 570 U.S. 136 (2013).

Compared to the proposed Settlement, which eliminates these risks, the anticipated complexity, cost and duration of the remainder of this litigation would be considerable. *See Advanced Battery*, 298 F.R.D. at 175 ("the complexity, expense, and likely duration of litigation are critical factors in evaluating the reasonableness of a settlement"); *see also Strougo v. Bassini*, 258 F. Supp. 2d 254, 261 (S.D.N.Y. 2003) (even if a "class member was willing to assume all the risks of pursuing the actions through further litigation . . . the passage of time would introduce yet more risks . . . and would, in light of the time value of money, make future recoveries less valuable than this current recovery"); *Hicks v. Morgan Stanley*, 2005 U.S. Dist. LEXIS 24890, at *16 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs [and]

justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the action.").

If not for this proposed Settlement, the litigation would have continued to be vigorously contested. The parties were preparing for a multi-week trial, scheduled to begin on January 9, 2023. ECF No. 379. Post-trial motions and appeals could last for years. *Fleisher v. Phx. Life Ins. Co.*, 2015 U.S. Dist. LEXIS 121574, at *22 (S.D.N.Y. Sept. 9, 2015) ("Even if the Class could recover a judgment at trial and survive any decertification challenges, post-verdict and appellate litigation would likely have lasted for years.") (citations omitted). A prolonged, lengthy and uncertain trial and appeals process would not serve the interests of the Class compared to the immediate and substantial monetary benefits of the proposed Settlement. Novartis was prepared and has shown the wherewithal to vigorously contest liability and damages at trial and on appeal. Novartis denied, and continues to deny, any liability. "Establishing otherwise [would] require considerable additional pre-trial effort and a lengthy trial, the outcome of which is uncertain." *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 199 (S.D.N.Y. 2012), *aff'd sub nom*. *Charron v. Wiener*, 731 F.3d 241 (2d Cir. 2013).

As to the risks of maintaining class certification (*Grinnell* factor six), Plaintiffs believe that absent the Settlement, the Court would have certified the Class, but that was not a given. Moreover, Novartis no doubt would have tried to appeal class certification pursuant to Rule 23(f) and/or after trial. Plaintiffs are confident that class certification was warranted here, but absent the unopposed class motion filed in connection with the Settlement, there was a risk that class certification would be denied, either by the District Court or on appeal. Plaintiffs understand that "the risk of maintaining a class through trial is present in any class action." *Guippone v. BH S&B Holdings LLC*, 2016 U.S. Dist. LEXIS 134899, at *19 (S.D.N.Y. Sept. 23, 2016).

The excellent Settlement achieved here in the face of these risks weighs in favor of final approval, as Plaintiffs have met the requirements of Rule 23(e)(2)(C)(i) and the first, fourth, fifth and sixth *Grinnell* factors.

### 2.  The Proposed Method for Distributing Relief Is Effective

As set forth below in § III.E., the proposed method of distributing relief to the class involves straightforward cash payments distributed on a *pro rata* basis based on data that has been produced in this litigation and analyzed by Plaintiffs' experts. This method of distribution has been approved in dozens of delayed generic cases. *See infra* at § III.E. Class Counsel have taken substantial efforts to ensure that the Class was notified about the Plan of Allocation, mailing notice to Class members and publishing notice on the website of Garwin Gerstein & Fisher LLP. *See* Administrator Decl. ¶ 3. No Class member has objected to the proposed Settlement, including the Plan of Allocation, and there have been no opt-outs. Thus, this factor supports final approval for the same reason that it supported preliminary approval. Rule 23(e)(2)(C)(ii) is satisfied.

### 3.  Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in Class Counsel's fee brief, Class Counsel seeks an award of attorneys' fees of 33 1/3% of the Settlement Amount (net of expenses and service awards, plus an equal percentage of any interest accrued since the settlement amount was escrowed) and expenses in an amount of $2,473,507.26. As explained in Class Counsel's fee brief, this request is reasonable under the circumstances. ECF No. 604. By way of summary, the requested fee is reasonable under the factors articulated in *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). Specifically, Class Counsel were responsible for shepherding this case to an "exceedingly good settlement," Jan. 6, 2023 Hearing Tr. 7:11-15, a result that came at considerable

financial and temporal expense. The Settlement came against a highly complex factual and legal backdrop, and despite considerable risk of nonrecovery. ECF No. 604 at 16-20. In addition, Class Counsel prosecuted this action with professionalism and efficiency, as the Court noted. *See Id*. at 20-22 (citing Jan. 6, 2023 Hearing Tr. 19:7-14; 23:16-19). Moreover, courts frequently award a one-third fee in cases of this type and magnitude, and a one-third fee award aligns with the public policies underlying the antitrust laws. *Id*. at 22-25. Finally, a lodestar cross-check shows that the lodestar in this case is commensurate or even below that of similar cases. *Id*. at 25-27.

No Class member has objected to the requests for fees and expenses. Administrator Decl. ¶ 6. Moreover, six Class members have provided letters in support of every aspect of the Settlement including Class Counsel's request for attorneys' fees and reimbursement of expenses. Exs. 3-8 hereto. Accordingly, Rule 23(e)(2)(C)(iii) is satisfied.

### 4. The Parties Have No Other Agreements in Connection with the Settlement Other Than the Opt-Out Threshold

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement required to be disclosed under Rule 23(e)(3). As disclosed in Plaintiffs' preliminary approval brief (ECF No. 588 at 29), Plaintiffs and Novartis entered into an agreement under which Novartis was permitted to terminate the Settlement after the Opt-Out Period expired, if the percentage of the Class (as measured against the settlement amount) that submitted requests for exclusion from the Class exceeded the percentage set forth in a confidential settlement addendum. Settlement Agreement § 14.[4] Because no Class member opted out of the Settlement, Novartis's right to terminate was not triggered. As such, the provision is of no consequence to the Court's final approval analysis.

---

[4] This percentage was disclosed to the Court at the January 6, 2023 preliminary fairness hearing. Jan. 6, 2023 Hearing Tr. 13:2-10.

### 5.   Class Members Are Treated Equitably

The final factor, Rule 23(e)(2)(D), looks at whether Class members are treated equitably. The proposed Plan of Allocation is designed to do precisely that. As discussed *infra* at § III.E., the Plan treats Class members equitably relative to each other, by allocating funds among Class members on a *pro rata* basis, which courts in similar cases have uniformly approved as equitable. The Settlement therefore meets the requirements of Rule 23(e)(2)(D).

### D.    The Proposed Settlement Satisfies the Remaining *Grinnell* Factors

### 1.   The Second *Grinnell* Factor – The Reaction of the Class

The reaction of the Class to the proposed Settlement "is considered perhaps the most significant factor to be weighed in considering its adequacy." *In re Veeco Instruments Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 85629, at *21 (S.D.N.Y. Nov. 7, 2007) (citation omitted). Indeed, the "absence of objections may itself be taken as evidencing the fairness of a settlement." *City of Providence v. Aeropostale, Inc.*, 2014 U.S. Dist. LEXIS 64517, at *15 (S.D.N.Y. May 9, 2014) (citing *PaineWebber*, 171 F.R.D. at 126). *See also In re Tesco PLC Sec. Litig.*, No. 14 Civ. 8495 (RMB), slip op. at 10 (S.D.N.Y. May 26, 2016) ("[T]he 'reaction of the class to the settlement' – favors approval of the Settlement insofar as no Class member objected to the Settlement.") (attached hereto as Ex. 2).

As noted above, no Class member opted out of the Class, and no Class member objected to the Settlement, the request for service awards, or the requests for attorneys' fees and reimbursement of expenses. To the contrary, six Class members have provided letters in support of every aspect of the Settlement including Class Counsel's request for attorneys' fees and reimbursement of expenses. Exs. 3-8 hereto. The positive reaction of the Class supports approval

of the proposed Settlement. *See In re Sadia S.A. Sec. Litig.*, 2011 U.S. Dist. LEXIS 149107, at *5 (S.D.N.Y. Dec. 28, 2011).

### 2. The Third *Grinnell* Factor – The Stage of the Proceedings and the Amount of Discovery Completed

In considering the third *Grinnell* factor, "'the question is whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement.'" *In re Bear Stearns Cos.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) (quoting *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012)).

Here, there can be no question that Class Counsel had sufficient information to make an informed decision on the propriety of the proposed Settlement. As detailed in the Gerstein Declaration, and summarized at page 3 hereof, Plaintiffs and Class Counsel spent the last five years vigorously litigating this case, and were preparing for trial that was scheduled to commence a short time after settlement was reached. *See* Gerstein Decl., ¶¶ 1-40.

Accordingly, Class Counsel "have developed a comprehensive understanding of the key legal and factual issues in the litigation and, at the time the Settlement was reached, had 'a clear view of the strengths and weaknesses of their case' and of the range of possible outcomes at trial." *City of Providence*, 2014 U.S. Dist. LEXIS 64517, at *19 (citing *Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004)).

### 3. The Seventh *Grinnell* Factor – Novartis's Ability to Withstand a Greater Judgment

Courts generally do not find the ability of a defendant to withstand a greater judgment to be a barrier to settlement when the other factors favor the settlement. "[T]he fact that a defendant is able to pay more than it offers in settlement does not, standing alone, indicate that the settlement

17

is unreasonable or inadequate." *PaineWebber*, 171 F.R.D. at 129; *see also IMAX*, 283 F.R.D. at 191 ("[A] defendant is not required to 'empty its coffers' before a settlement can be found adequate.") (citations omitted). "[W]here, as here, the other *Grinnell* factors weigh in favor of approval, this factor alone does not suggest a settlement is unfair." *Christine Asia*, 2019 U.S. Dist. LEXIS 179836, at \*50 (citation omitted). Moreover, the fact that Novartis may have the ability to pay a greater judgment is outweighed here by the other strong considerations favoring the proposed Settlement, most notably, the risks to the Class of establishing liability and damages at trial and the reasonableness of the proposed Settlement amount in light of those risks.

### 4. The Eighth and Ninth *Grinnell* Factors – The Proposed Settlement Amount Is Reasonable in View of the Best Possible Recovery and the Risks of Litigation

Courts typically analyze the final two *Grinnell* factors in tandem. *Guevoura*, 2019 U.S. Dist. LEXIS 218116, at \*28 n.1. The adequacy of the amount offered in a settlement is not to be judged "in comparison with the possible recovery in the best of all possible worlds," but rather is to be assessed in "light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987); *see also Wal-Mart*, 396 F.3d at 119. That is, whether the settlement falls within a "'range of reasonableness.'" *PaineWebber*, 171 F.R.D. at 130 (citation omitted). The "range of reasonableness" has been described by the Second Circuit as a range that "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Nichols v. Noom, Inc.*, 2022 U.S. Dist. LEXIS 123146, at \*12 (S.D.N.Y. July 12, 2022) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).

18

Here, the $126.85 million proposed Settlement is a very favorable outcome for the Class. As explored at the preliminary fairness hearing, it is approximately 85% of Plaintiffs' conservative damages estimate, an outstanding result by any measure. Jan. 6, 2023 Hearing Tr. 3:17-7:15. While there were more aggressive damages estimates, they depended on Plaintiffs being able to prove at trial that the NPLA was fraudulently concealed from Plaintiffs, an issue that was subject to a motion for summary judgment that was pending at the time of settlement, and about which the Court expressed skepticism as to Plaintiffs' prospects. *Id*. at 4:3-4.

Finally, the proposed Settlement offers the opportunity to provide immediate relief to the Class, rather than a speculative payment years down the road. *See In re AOL Time Warner, Inc.*, 2006 U.S. Dist. LEXIS 17588, at *44 (S.D.N.Y. Apr. 6, 2006) (where the settlement fund is in escrow and earning interest for the class, "the benefit of the Settlement will . . . be realized far earlier than a hypothetical post-trial recovery"). In light of the complex legal and factual issues present here, the fairness of the proposed Settlement is apparent. *See, e.g.*, *Maley*, 186 F. Supp. 2d at 366-67.

Accordingly, Plaintiffs respectfully submit that the immediate cash benefit of $126.85 million is well "within the range of reasonableness" in light of the best possible recovery and the risks of litigation.

### E.     The Plan of Allocation Is Fair and Adequate

The Court should approve the proposed Plan of Allocation, which, like many similar plans in analogous cases, would efficiently and fairly allocate the net settlement fund on a *pro rata* basis to Class members who submit claims. Approval of a plan of allocation for a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole, *i.e.,* the distribution plan must be fair, reasonable and adequate. *Hart v. RCI Hosp. Holdings*, 2015 U.S. Dist. LEXIS 126934, at *33-34 (S.D.N.Y. Sept. 22, 2015). "[A]n allocation

formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent Class counsel." *Id.* at *34 (quoting *Maley*, 186 F. Supp. at 367).

Here, the proposed Plan of Allocation meets this standard. As set forth in the Direct Purchaser Class Plaintiffs' [Proposed] Plan of Allocation for the Direct Purchaser Class (ECF No. 587-2) and accompanying Declaration Related to Proposed Settlement Allocation Plan by Dr. Jeffrey J. Leitzinger (ECF No. 587-3), the proceeds of the proposed Settlement in this case, net of Court-approved attorneys' fees and costs, service awards for Named Plaintiffs, and administration costs and expenses ("Net Settlement Fund"), will be paid to Class members who submit timely and valid claims based on each Class member's *pro rata* share of the Class's total purchases of brand and/or generic Exforge from Novartis and Par. This plan is similar to plans that have previously been approved by courts in analogous cases and implemented with a high degree of success and efficiency and should be approved here as well. *E.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 316 (S.D.N.Y. 2020) (approving *pro rata* allocation based on claimants' purchases); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 2020 U.S. Dist. LEXIS 198674, at *16-17 (E.D.N.Y. Oct. 7, 2020) (same). *See also In re Opana ER Antitrust Litig.*, No. 14-cv-10150 (N.D. Ill. Dec. 15, 2022), ECF No. 1090 (same); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-md-02878 (D. Mass. Sept. 8, 2022), ECF No. 612 (same); *In re Glumetza Antitrust Litig.*, 2022 U.S. Dist. LEXIS 20157, at *26-27 (N.D. Cal. Feb. 3, 2022) (same); *In re Loestrin 24 FE Antitrust Litig.*, 13-md-02472 (D.R.I. Sept. 1, 2020), ECF No. 1462 (same); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503-DJC (D. Mass.), ECF Nos. 1163, 1179 (same).

The allocation will reflect the amount of relative damage sustained by each Class member. The Plan of Allocation will allocate the Net Settlement Fund to Class members efficiently and fairly by relying upon the electronic data that has been produced in this litigation. Class members

will be provided claim forms that set forth each Class member's qualifying purchases based on transaction data produced during discovery. Under the proposed plan, the claims administrator, working with Dr. Leitzinger and his staff, will prepare and send these individualized claim forms to each member of the Class. *See* Plan of Allocation, ECF No. 587-2 at ¶ 1.1.

The Plan of Allocation provides a fair and reasonable method of determining each Class member's proportionate share of the Net Settlement Fund in proportion to the share of overcharges each suffered. It does so based on each Class member's purchases of brand and/or generic Exforge from Novartis and Par during the relevant time period. *See* Plan of Allocation, ECF No. 587-2 at § 2. Among other things, the Plan of Allocation describes: (1) the method of calculating each Class member's *pro rata* share of the Net Settlement Fund; (2) the contents and method of disseminating a claim form; (3) the manner in which claims will be initially reviewed and processed; (4) the method of notifying Class members of the amount that each Class member will receive from the Net Settlement Fund; and (5) the process for handling and resolving challenged claims, if any. *Id*. The Plan of Allocation also provides timetables for completing various tasks related to calculating and distributing each Class member's *pro rata* share of the Net Settlement Fund. *Id*. §§ 3, 4, 7. Moreover, the Plan of Allocation proposes that Dr. Leitzinger be retained to assist in making allocation computations under the Plan. *Id*. ¶ 3.1.

Accordingly, the proposed Plan of Allocation is fair and reasonable, and should be approved by the Court.

## IV.    CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that this Court find that the proposed Settlement and the proposed Plan of Allocation are fair, reasonable and adequate, and enter the proposed Order and Final Judgment approving them. Additionally, Class Counsel

respectfully request that the Court approve the pending Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards for the Class Representatives (ECF No. 603).

Dated: March 30, 2023

Respectfully submitted,

*/s/ Bruce E. Gerstein*

Bruce E. Gerstein
Dan Litvin
Deborah A. Elman
**GARWIN GERSTEIN & FISHER LLP**
88 Pine Street Fl. 10
New York, NY 10005
212-398-0055
Email: bgerstein@garwingerstein.com
dlitvin@garwingerstein.com
delman@garwingerstein.com

*Attorneys for Plaintiff Drogueria Betances, LLC Lead Counsel for the Direct Purchaser Class*

**FARUQI & FARUQI, LLP**
Kristyn Fields
685 Third Ave., Floor 26
New York, NY 10017
Tel.: (212) 983-9330
Fax: (212) 983-9331
Email: kfields@faruqilaw.com

**FARUQI & FARUQI, LLP**
Peter Kohn
Joseph T. Lukens
1617 JFK Blvd., Suite 1550
Philadelphia, PA 19103
Tel: (215) 277-5770
Email: pkohn@faruqilaw.com
Email: jlukens@faruqilaw.com

**BERGER MONTAGUE PC**
David F. Sorensen
Caitlin G. Coslett
Andrew C. Curley
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: dsorensen@bm.net
Email: ccoslett@bm.net
Email: acurley@bm.net

*Attorneys for Plaintiff Rochester Drug Co-Operative, Inc. and the Direct Purchaser Class*

**KAPLAN FOX & KILSHEIMER, LLP**
Robert N. Kaplan
Matthew P. McCahill
Ralph E. Labaton
850 Third Avenue, 14th Floor
New York, New York 10022
Tel: 212-687-1980
Fax: 212-687-7714
Email: rkaplan@kaplanfox.com
Email: mmccahill@kaplanfox.com
Email: rlabaton@kaplanfox.com

**SPERLING & SLATER, P.C.**
Joseph M. Vanek
David P. Germaine

**SMITH SEGURA RAPHAEL & LEGER, LLP**
David Raphael
Erin Leger
Susan Segura
221 Ansley Boulevard
Alexandria, LA 71303
Tel: (318) 445-4480
Fax: (318) 487-1741
Email: draphael@ssrllp.com
Email: eleger@ssrllp.com
Email: ssegura@ssrllp.com

**ODOM & DES ROCHES, LLC**
Stuart Des Roches
Andrew Kelly
Dan Chiorean
Poydras Center
650 Poydras Street, Suite 2020
New Orleans, LA 70130
Tel: (504) 522-0077
Fax: (504) 522-0078
Email: stuart@odrlaw.com
Email: akelly@odrlaw.com
Email: dchiorean@odrlaw.com

**HEIM PAYNE & CHORUSH LLP**
Russell A. Chorush
1111 Bagby, Suite 2100
Houston, TX 77002
Tel: (713) 221-2000
Fax: (713) 221-2021
Email: rchorush@hpcllp.com

*Attorneys for Plaintiff Drogueria Betances, LLC and the Direct Purchaser Class*

**ROBERTS LAW FIRM, P.A.**
Michael L. Roberts
Stephanie E. Smith
20 Rahling Circle
Little Rock, AR 72223
Tel.: (501) 821-5575
Fax: (501) 821-4474
mikeroberts@robertslawfirm.us

55 W. Monroe, Suite 3200
Chicago, Illinois 60603
Tel: (312) 641-3200
Fax: (312) 641-6492
Email: jvanek@sperling-law.com
Email: dgermaine@sperling-law.com

*Attorneys for Plaintiff FWK Holdings, LLC and the Direct Purchaser Class*

stephaniesmith@robertslawfirm.us

*Attorneys for Plaintiff KPH Healthcare Services, Inc., a/k/a Kinney Drugs, Inc and the Direct Purchaser Class*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing memorandum was served on all parties of record through the Court's Electronic Case Filing and Case Management system on March 30, 2023.

<u>*/s/ Bruce E. Gerstein*</u>

Bruce E. Gerstein